# STATE BOARD OF REGISTRATION FOR PRO-
## FESSIONAL ENGINEERS AND LAND
## SURVEYORS *v.* RUTH

[No. 33, September Term, 1960.]

*Decided November 11, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellant.

*Richard A. Reid,* with whom were *Kenneth C. Proctor* and *Proctor, Royston & Mueller* on the brief, for the appellee.

Briefs of *amici curiae* in support of the appellant filed by *Howard H. Conaway* for the Maryland Society of Professional Engineers, Inc., and by *John D. Alexander, John D. Alexander, Jr.,* and *Constable, Alexander & Daneker* for the Maryland Society of Surveyors, Inc.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County which reversed the decision of the State Board of Registration for Professional Engineers and Land Surveyors (the Board) not to register the appellee, J. W. Ruth, as a professional engineer, without first requiring him to take an examination, and directed the Board to register him as such and to issue a certificate of such registration. In accordance with leave granted, the Maryland Society of Professional Engineers, Inc. and the Maryland Society of Surveyors, Inc. have filed briefs as *amici curiae* in which they have supported the position of the Board, and these briefs have been helpful to this Court.

The case presents two main questions: first, whether judicial review of the Board's action is governed by the appeal provisions of § 18(d) of the Professional Engineers and Land Surveyors Law (the Act—Code (1957), Art. 75½) or by the judicial review provisions (§ 255) of the Administra-

tive Procedure Act (the APA—Code (1957), Art. 41, §§ 244-256) ; and second, whether under the applicable review statute and the provisions of the Act relating to the registration of professional engineers, the evidence was such as to warrant the trial court's reversal of the Board's decision that the appellant was not entitled to registration without examination. A question is also presented as to whether the appellee had exhausted his administrative remedies, since he did not take the examination offered by the Board, but we shall assume that he has exhausted such remedies.

The appellee, J. W. Ruth, holds a B.S. degree in industrial engineering granted in 1934 by Pennsylvania State College (now University), and his educational qualifications for registration are conceded. He is Vice President and Assistant General Manager of a well known contracting company, with which (in its present or previous form of organization) he has been associated since 1941. This company has handled many large highway and other construction projects. Mr. Ruth's work for it has given him extensive experience in grading, paving, bridge work, structural concrete and drainage work, and he has had substantial experience in the supervision of construction from layout to completion. Neither his ability nor his experience in the work which he actually does and has done for a number of years is questioned. On the other hand it is evident, and it is not disputed, that although engineering work and contracting work may and do overlap, they are by no means identical. In a somewhat rough and general way, it may be said that in construction work, engineering is concerned with planning and design, including the making of necessary calculations incident thereto, and contracting is concerned with carrying plans and designs into practical effect. The extent of the overlapping in any given situation may depend upon the extent to which the planning and designing work may be done by the owner and the extent to which it may be furnished by the contractor. At the bottom of the controversy between Mr. Ruth and the Board is the question of whether or not his experience in contracting work included such experience in engineering work as must be shown in order to meet the requirements prescribed by the

Act for registration, without examination, as a professional engineer.

This controversy extended somewhat sporadically from soon after the date of filing of Mr. Ruth's original application, which was February 16, 1953, until 1959, when the present suit was instituted, and still continues in this case.

Promptly upon the filing of the original application the Board's Secretary wrote letters of inquiry to Mr. George H. Langenfelder, the President of the corporation of which Mr. Ruth is Vice President, and to Mr. Gustav J. Requardt, a well known consulting engineer, who was one of those who had signed the certificate on Mr. Ruth's application headed "References of Character". This certificate reads as follows: "This certifies that I have been personally acquainted with J. W. Ruth since the year indicated opposite my name [10 years in Mr. Requardt's case]; that I have read his foregoing statements [which included those pertaining to education and experience], which so far as known to me are correct; that I believe him to be of good character and repute." On July 15, 1953, Mr. Ruth's application was "processed," presumably by Mr. Gore, then Secretary of the Board. His experience was summarized as "Chiefly Managing Construction" and the result of reference inquiries was stated as "O.K. for Construction and Contracting," and there was a recommendation that the application should be reviewed by Mr. Coffin. Whether this was done or not does not appear.

The next notation in the file was made under date of December 7, 1953, by Dean Steinberg, of the Department of Engineering of the University of Maryland, then Chairman of the Board and a representative of the civil engineers. He wrote: "I know Ruth. He is an estimator on construction work and a method planner of the first order. His decisions hold on millions of dollars of contracts. The largest earth construction on the Atlantic coast. Not familiar with design knowledge of Ruth. Have not seen design data he submits. Should have more evidence of engineering." At the time this entry was made Mr. Ruth had not submitted any design data to the Board. On April 17, 1954, Mr. Ruth inquired about the current status of his application. On April 26, 1954, the

then Secretary, Mr. Gore, replied and asked Mr. Ruth to furnish a transcript of his college record (which was later duly furnished and was satisfactory as to Mr. Ruth's educational qualifications) and also asked if he could "forward additional evidence of your engineering work and this submittal should include typical work sheets indicating calculations, developments of design data, etc., and/or drawings developed by you in your work." On May 3, 1954, Mr. Ruth replied asking to be allowed to appear personally before the Board (a request which was not granted) and stating that "I do not have typical work sheets, etc. which could be sent to you." He also requested further consideration of his application at the Board's earliest convenience.

On August 4, 1954, Dean Steinberg made a further note: "In view of failure of applicant to submit acceptable evidence as requested in Secretary's letter of April 26, and fact that applicant's experience [is] almost wholly in contracting, I recommend applicant be held for examination." On August 6, 1954, the Board adopted Dean Steinberg's recommendation of August 4, 1954, and ten days later notified Mr. Ruth accordingly; and in October, 1954, notified him of the examination to be held in November, 1954. Mr. Ruth replied that due to prior business commitments, he would be unable to attend and again requested that he be registered without examination. Mr. Gore wrote him in reply that the reason for not doing so was that "the Board was unable to find sufficient evidence of basic engineering or design experience, as required by law, to grant registration; [and had] therefore, provided an alternate means of determining your qualification by listing you for examination, rather than enter a denial in your case."

Mr. Ruth did not abandon his efforts to obtain registration without examination. He maintained a persistent, though intermittent, correspondence with the Board until 1959, with some activity in each year, except 1958. During this time the Board adhered to its position that more evidence of strictly engineering experience was necessary. In July, 1955, Mr. Ruth did submit some data, including design work for a test, pertaining to a bridge on an extension of a major highway,

the Delaware River Extension of the Pennsylvania Turnpike. This will be referred to later. In 1955 and 1956 (as in 1954) Mr. Ruth was notified to take the examination; each time he did not do so. Ultimately (in 1957) his application was denied because of such failure; but as a result of continued correspondence and a new application filed in 1959, he received the benefit of consideration on this last application of all data previously filed by him. During this period the Board reviewed Mr. Ruth's application and supporting data several times, but each time found the supporting data insufficient. Mr. Ruth proposed at one time or another that the Board send him an examination so that he could take it at home or that he be given an oral examination by the Board, both of which suggestions were turned down, and no complaint is made with regard to these refusals by the Board.

Mr. Ruth's renewal application filed in August, 1959, was referred to Professor Comber, who had succeeded Dean Steinberg as the civil engineer member of the Board. Professor Comber had been a member of the faculty of Johns Hopkins University for some forty years in the field of Civil Engineering and Structural Engineering. His review of Mr. Ruth's application carries a notation similar to that made by Dean Steinberg five years earlier as to evidence of Mr. Ruth's engineering experience. He wrote under "Summary": "Very little evidence to show Eng. Competency. Construction Superintendent. New evidence just restatement of work. Refused to take examination. (Hold again for Examination.)" The Board adopted this view and Mr. Ruth was advised accordingly and was informed of the December, 1959 examination dates. This suit followed.

At the hearing the Board's record was submitted and two members of the Board testified. One was Mr. Mecredy, a chemical engineer, who had been on the Board throughout the period of Mr. Ruth's applications, the other was Professor Comber. No other witnesses were called. (Mr. Gore, the former Secretary, had died shortly before the hearing.) Both of them (Professor Comber rather naturally more sharply in civil engineering matters) drew the line firmly between experience involving what we may call the scientific or technical

side of engineering work, which would call for knowledge of mathematics, mechanics, strength of materials and the sciences, and construction work which would involve in large measure the carrying out of designs and plans of others. The work sheets which Mr. Ruth submitted were described as involving rather simple engineering work. Both Mr. Mecredy and Professor Comber expressed the Board's view that it was required under the statute to have before it satisfactory evidence that an applicant had had four years of experience in the scientific or technical side of engineering (as we have called it) in order to register an applicant without examination. They reiterated the Board's position that Mr. Ruth had not presented such evidence as was required to meet this test.

It was also brought out at the hearing that the Board had not made any new inquiries of the several Professional Engineers who signed the certificate headed "References of Character" contained in Mr. Ruth's 1959 application. Mr. Requardt was the only one who signed both the 1953 and the 1959 applications. His recommendation and Mr. Langenfelder's were in the file and were considered. (Mr. Langenfelder, though thoroughly familiar with Mr. Ruth's work, does not appear to be a Professional Engineer. He was listed as a reference in Mr. Ruth's record of employment.) The trial judge placed great emphasis on these recommendations by Professional Engineers and seems to have regarded them as certificates of competence. Whether they were so intended or not, they are not expressed as such, as the form of certificate above quoted shows. Mr. Requardt's and Mr. Langenfelder's replies to the Board's inquiries were undoubtedly favorable and Mr. Requardt explicitly recommended his registration.

The first of the two main questions to be decided is whether review of a decision of the Board is to be governed by § 18(d) of the Act (Art. 75½ of the 1957 Code) or by the judicial review section of the APA (§ 255 of Art. 41 of the 1957 Code). The trial judge entertained the view that the power conferred upon a court reviewing a decision of the Board on an appeal under § 18(d) of the Act to "make such decree sustaining or reversing the action of the Board as to it may seem

just and proper" was broader than the scope of review authorized under the APA, and that it warranted his reversing the Board and ordering the issuance of a certificate of registration to Mr. Ruth.

It would serve no useful purpose to go into a discussion of the proper construction of § 18(d) and the question of whether it is actually broader than the APA or whether it made any substantial departure from the rule consistently recognized by this Court as to the limited scope of judicial review of the action of administrative agencies. As to that rule, see Oppenheimer, *Administrative Law in Maryland*, 2 Md. L. Rev. 185, 208-210, and the numerous cases decided by this Court since the publication of that article (1938) in which it has been held that a reviewing court may not substitute its judgment for that of the administrative body. See also 1 M. L. E., *Administrative Law and Procedure*, §§ 47-49, and the cases therein cited, especially *Serio v. Mayor & C. C. of Baltimore*, 208 Md. 545, 119 A. 2d 387; and *Offutt v. Board of Zoning Appeals*, 204 Md. 551, 105 A. 2d 219. Cf. *Hedin v. Board of Co. Com'rs of Prince George's County*, 209 Md. 224, 120 A. 2d 663. (All three of the cases just cited are zoning cases.) The reason for our view that the proper construction of § 18(d) of the Act is of no present importance is that if there is any inconsistency between that section and the APA with regard to judicial review, the provisions of the APA are controlling by virtue of the explicit terms of Sec. 3 of Ch. 94 of the Acts of 1957 (the Act which enacted the APA) that "all Acts or parts of Acts which are inconsistent with the provisions of this Act are hereby repealed to the extent of such inconsistency * * *."

Although the APA may have broadened to some extent the scope of judicial review of the findings, inferences, conclusions and decisions of administrative agencies, it has not altered the basic concept that a court is not to substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal (as defined in Maryland Rule 1101) is taken. *Bernstein v. Real Estate Comm. of Maryland*, 221 Md. 221, 230, 156 A. 2d 657.

We come then to the fundamental question or questions in

the case—the correctness of the Board's interpretation of the Act and the sufficiency of the evidence to support its conclusion. Mr. Ruth is seeking certification as a professional engineer. The first thing to be considered is, what is a professional engineer under the Act? The definition appears in § 2 (b) of the Act:

> "The term 'professional engineer' * * * shall mean a person who, by reason of his special knowledge of the mathematical and physical sciences and the principles and methods of engineering analysis and design, acquired by professional education and practical experience, is qualified to practice engineering as hereinafter defined as attested by his legal registration as a professional engineer."

The definition of the practice of engineering is contained in § 2 (d) of the Act, which, so far as here pertinent reads as follows:

> "The term 'practice of engineering' * * * shall mean any professional service or creative work requiring engineering education, training, and experience and the application of special knowledge of the mathematical, physical and engineering sciences to such professional services or creative work as consultation, investigation, evaluation, planning, design, and supervision of construction for the purpose of assuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects. * * *."

This sub-section also contains an enumeration of activities which shall be deemed to constitute practicing or offering to practice engineering. Such activities by persons not duly registered under the Act are penalized under § 19.

Requirements for registration as a professional engineer are stated in § 12 of the Act. We are here concerned only with its opening paragraph and with sub-section (1) (a) and an

unlettered paragraph headed "Work as contractor." These, in pertinent part, read as follows:

> "The following shall be considered as minimum evidence satisfactory to the Board that the applicant is qualified for registration as a professional engineer * * *:
>
> "(1) As a professional engineer:
>
> (a) *Engineers—Graduation plus experience.*— Graduation in an approved engineering curriculum of four years or more from a school or college approved by the Board as of satisfactory standing; and a specific record of an additional four years or more of experience in engineering work of a character satisfactory to the Board, and indicating that the applicant is competent to practice engineering * * *, provided that in a case where the evidence presented in the application does not appear to the Board conclusive nor warranting the issuing of a certificate of registration, the applicant may be required to present further evidence for the consideration of the Board, and may also be required to pass an oral or written examination or both, as the Board may determine; * * *.
>
> * * * *
>
> "Work as contractor.—The mere execution, as a contractor, of work designed by a professional engineer, or the supervision of the construction of such work as a foreman or superintendent shall not be deemed to be the practice of engineering."

Bearing these requirements in mind, and taking into account the fact that under § 3 of the Act the Board is to be composed of a group of experts, we think it is manifest that substantial discretion is vested in the Board and that its members are to exercise it with the benefit of their expert knowledge. Cf. *Duncan v. McNitt Coal Co.,* 212 Md. 386, 129 A. 2d 523, involving the expert knowledge of the Medical Board in Workmen's Compensation cases. We are wholly unable to adopt the view of the learned trial judge that the Board

did not give sufficient weight to the recommendations of registered professional engineers who were not members of the Board; (even if we assume that there was in fact more than one such recommendation). Both authority and responsibility rest with the Board. If the Legislature had seen fit to make the right to registration depend upon the recommendations of non-Board members, it would have been quite simple to say so and wholly superfluous to require any investigative action on the part of the Board.

In our opinion the Board was correct in construing the statute as requiring that an applicant for registration as a professional engineer must show "special knowledge of the mathematical and physical sciences and the principles and methods of engineering analysis and design," and as requiring that an applicant must submit evidence satisfactory to the Board that he is competent to engage in the work of a professional engineer. This holding is in full accord with the views of our predecessors in *Stark v. State Board of Registration,* 179 Md. 276, 19 A. 2d 716, which involved provisions of the "grandfather clause" of the Act (§ 16) similar to those here involved with regard to the Board's requirement of a showing of experience such as, in conjunction with education, would establish the applicant's qualification for registration. We may remark that in the *Stark* case the applicant had an impressive list of recommendations for his registration. This Court, however, found nothing to indicate that the Board had acted arbitrarily in seeking further information. We find no indication of arbitrary action here. The Board followed the statute and sought such information as the statute required and in the exercise of its expert judgment found the applicant's evidence of his qualifications as to the kind of work in which he had had experience not to measure up to the standard. Under the rule recently stated in *Bernstein v. Real Estate Comm., supra,* we think that judicial reversal of the Board's action in this case was not warranted under the APA. Not even the provision of the APA permitting the court to reverse a finding because it is against the weight of the evidence (§ 255 (g)) would support the trial court's order in this case. The Board applied, and properly applied, its ex-

pert knowledge to the evidence before it. We cannot find that in so doing, on the data before it, it reached a finding against the weight of the evidence, still less that it acted arbitrarily.

It follows that the order of the Circuit Court must be reversed and the decision of the Board reinstated.

*Order of the Circuit Court reversed, and decision of the State Board of Registration reinstated; the appellee to pay the costs.*