## ROGERS *v.* RADIO SHACK ET AL.

[No. 170, September Term, 1973.]

*Decided January 31, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Dennis M. Sweeney* for appellant.

*Diana G. Motz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Joel J. Rabin, Assistant Attorney General,* on the brief, for the Board of Appeals, part of appellees. No brief filed on behalf of the other appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This appeal involves a denial by the Employment Security Administration of 10 weeks' unemployment insurance

benefits to the appellant, Dannie A. Rogers. The denial of benefits was based upon the administrative determination that Rogers had been guilty of misconduct which led to his discharge.

Dannie A. Rogers was the manager of a retail store in Hyattsville, Maryland, owned by his employer, Allied Radio Shack. On January 31, 1972, the employer's district manager and another man came to the store and informed Rogers that he was being fired. According to Rogers's testimony, the two men stated that the discharge was because Rogers installed a citizen's band radio in his car, because he loaned a stereo set to a customer, and because the store's petty cash was allegedly $70.00 short. Thereafter, in response to Rogers's application for unemployment insurance benefits, the employer filed a statement with the Employment Security Administration saying that Rogers had been discharged for misconduct. The misconduct was described as taking company funds and merchandise without authorization and for Rogers's personal use in violation of company policy. The official of Allied Radio Shack signing the statement designated himself as "Tax Accountant."

A claims examiner of the Employment Security Administration determined that Rogers's discharge was due to his "gross misconduct" and that, therefore, Rogers was disqualified from receiving benefits. Under the Maryland Unemployment Insurance Law, a discharge for "gross misconduct" totally disqualifies an employee from receiving benefits whereas a discharge or suspension for ordinary "misconduct" results in the denial of benefits for a period from two to ten weeks, depending on the seriousness of the misconduct. Maryland Code (1957, 1969 Repl. Vol.), Art. 95A, §§ 6 (b) and 6 (c).

Rogers appealed the claims examiner's determination to an appeals referee. After a hearing, at which the employer did not appear but Rogers testified extensively, the referee affirmed the claims examiner's decision. Thereafter, Rogers took an appeal to the Board of Appeals of the Employment Security Administration. The Board initially declined to review the referee's decision but, after receiving new

evidence, the Board granted Rogers another hearing before a special examiner designated by the Board. The new evidence consisted of a letter signed by the vice president of Radio Shack, advising the Employment Security Administration that the information previously furnished by the employer was "untrue," in that Rogers's actions did not constitute gross misconduct, and that he did not convert funds or merchandise to his own benefit. The letter concluded by stating that the employer would be willing to rehire Rogers.

At the hearing before the special examiner, the employer again did not appear, and the only evidence consisted of Rogers's testimony. Following the hearing, the Board of Appeals held that there was insufficient evidence to sustain the prior finding of gross misconduct. Nevertheless, the Board found that Rogers was guilty of ordinary misconduct connected with his work, and it disqualified him from receiving benefits for the maximum ten-week period.

Rogers appealed the administrative decision to the Circuit Court for Prince George's County, and the court affirmed the Employment Security Administration's decision. From that order of affirmance, Rogers prosecutes the present appeal. The employer did not participate in the proceedings either before the circuit court or this Court.

Two questions are raised on this appeal. First, Rogers contends that the circuit court should have granted his motion to strike a certain document from the administrative record. Second, he claims that there was an insufficient evidentiary basis for the administrative determination that he was guilty of misconduct.

(1)

At some time during the administrative proceedings, an investigation into Rogers's discharge was apparently ordered by the administrative officials, and the investigator's report was included in the record submitted to the circuit court. Rogers filed a motion in the circuit court to strike the investigator's report from the record on the grounds that it had never been introduced in evidence at any of the hearings, that Rogers and his representative had been

unaware of it until several months after the administrative decision, and that there had been no opportunity to cross-examine the investigator or rebut the contents of the report. The circuit court denied the motion to strike.

Administrative agencies, while not bound by common law rules of evidence, "must observe the basic rules of fairness as to parties appearing before them." *Dal Maso v. Board of County Comm'rs*, 238 Md. 333, 337, 209 A. 2d 62, 64 (1965). We agree with Rogers that under the circumstances here, with no opportunity for cross-examination or rebuttal, fundamental fairness would preclude reliance upon the report by an administrative agency or a reviewing court. *Dal Maso v. Board of County Comm'rs, supra; Temmink v. Board of Zoning Appeals*, 205 Md. 489, 496-97, 109 A. 2d 85, 89 (1954); *Dembeck v. Shipbuilding Corp.*, 166 Md. 21, 170 A. 158 (1934). Nevertheless, our examination of the record convinces us that neither the Board of Appeals nor the circuit court placed any weight upon the investigator's report. Because of this, we need not decide whether, as a technical matter, the court should have stricken the report from the administrative record. Any error in this regard was harmless. This is particularly so in light of our disposition of the case.

(2)

The appellant's second claim of error relates to the evidentiary basis for the administrative determination that he had engaged in misconduct.

The judicial review section of the Maryland Unemployment Insurance Law, Code (1957, 1969 Repl. Vol.), Art. 95A, § 7 (h), provides in pertinent part:

"In any judicial proceeding under this section, the findings of the Board of Appeals as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive . . . ."

As no allegation of fraud is made, the question presented is whether there is sufficient support for the administrative

finding that Rogers was guilty of misconduct because he used the citizen's band radio in his car as a demonstrator, because he loaned a stereo to a customer, and because of the charge that the store's petty cash was $70.00 short.

As a preface to his argument concerning the lack of evidentiary support for the administrative decision, appellant Rogers contends that the Board of Appeals' findings are conclusive only if supported by "substantial" evidence. Reliance is placed upon this Court's opinions in *Bethlehem Steel Co. v. Board of Appeals*, 219 Md. 146, 150, 148 A. 2d 403, 406 (1959), and *Steamship Ass'n v. Unemployment Comp. Bd.*, 190 Md. 215, 219, 57 A. 2d 818, 820 (1948), where the Court used the phrase "substantial evidence" with respect to judicial review under the Unemployment Compensation Law. The Employment Security Administration, pointing out that the word "substantial" does not appear in the judicial review provision of the Unemployment Compensation Law, and citing other opinions where the Court did not employ the phrase "substantial evidence" (*e.g.*, *Watkins v. Employment Sec. Adm.*, 266 Md. 223, 225, 292 A. 2d 653, 654 (1972)), urges that the standard for judicial review is a lesser one than the "substantial evidence" test.

None of the cited opinions of this Court has decided this issue. The Court in *Mitchell, Inc. v. Maryland Emp. Sec. Bd.*, 209 Md. 237, 240, 121 A. 2d 198, 199 (1956), recognized that this was an open question, saying: ". . . we need not consider whether the evidence referred to in the statute must be substantial or only legally sufficient. Both expressions have been used in the cases cited." Like our predecessors in *Mitchell*, we also need not resolve the issue. Under any standard of judging evidentiary support, the administrative decision here is deficient.[1]

---

1. It is noteworthy that with respect to the decisions of most state agencies, the judicial review standard contained in the Administrative Procedure Act, Code (1957, 1971 Repl. Vol.), Art. 41, § 255 (g), of "competent, material and substantial evidence in view of the entire record," will most likely be the applicable standard. See, State Board v. Ruth, 223 Md. 428, 435-36, 165 A. 2d 145, 149 (1960). However, the Employment Security Administration is one of the few agencies exempt from the Administrative Procedure Act, Art. 41, § 244 (a).

The factual material in this record consists of the employer's two written statements, a written statement of Rogers, and Rogers's testimony at the hearings. While the employer's initial statement, made on an agency separation form, generally charged that Rogers had been discharged for misconduct, consisting of taking company funds and merchandise without authorization and in violation of company policy, there were no facts set forth describing or delineating these charges. Moreover, the employer's later written statement largely repudiated the first statement. In that letter, the employer's vice president said:

> "This is to advise that the information placed upon Separation Form 207A for Dannie A. Rogers is untrue, in that during the employment of Dannie Rogers with Allied Radio Shack, none of his actions constituted gross misconduct, and that he never converted Allied Radio Shack funds or merchandise to his own benefit.
>
> "Allied Radio Shack would hire Dannie A. Rogers, should he decide to return."

In light of this, the earlier statement from the employer furnishes no evidentiary support for the administrative decision, and this is conceded by counsel for the Employment Security Administration.

The Administration argues, however, that the evidentiary basis for its decision can be found in the statements and testimony of Rogers himself, where he allegedly admitted performing acts constituting misconduct. As to the citizen's band radio, Rogers admitted taking it from the store and placing it in his personal car whenever he wished to demonstrate the operation of the radio to a customer. He went on to explain that most of the time the radio was in the store, and that he would place it in his car only when he needed to demonstrate it. Rogers further testified that he made numerous sales of citizen's band radios by so demonstrating them. On one occasion he sold three radios to the same customer as a result of the demonstration. While there was no testimony as to company policy concerning the

use of merchandise for demonstration purposes, Rogers stated that he had known other managers to do this.

Turning to the loan of a stereo set, Rogers again acknowledged that he did the act. However, he testified that the set was loaned to a good customer because the customer's stereo unit "was in our shop for repair" and that "there was nothing in the company policy that said you couldn't." He went on to say that other managers did this, that decisions to loan replacement merchandise to customers having an item repaired depended upon "the merits of the customer," and that this was a "good customer."

Concerning the allegation of a cash shortage, there was no actual evidence that a shortage existed in the store's petty cash. Rogers testified that when he last checked the petty cash earlier on the day he was fired, the correct amount of cash was present. He went on to say that when the district manager came to the store, made the charge that the petty cash fund was short, and fired him, he did not have a chance again to check the petty cash fund. He did not know whether any cash was missing, but he did deny that he had converted the employer's funds. Moreover, he testified that there were two other employees of the store, one of whom had a key to the petty cash drawer.

The Board of Appeals of the Employment Security Administration used the following as a definition of misconduct:

> "The term, 'misconduct,' as used in the Statute, means a transgression of some established rule or policy of the employer, the commission of a forbidden act, a dereliction of duty, or a course of wrongful conduct committed by an employee, within the scope of his employment relationship, during hours of employment, or on the employer's premises."

However, nothing in Rogers's testimony supports a finding of misconduct under this definition or under any other reasonable definition. The use of the radio as a demonstrator and the loan of the stereo set to a customer did

not, under the circumstances revealed here, intrinsically constitute a forbidden or wrongful act or dereliction of duty. We can perceive nothing inherently wrong in a store manager's engaging in these practices. If his conduct had violated any policy of his employer the situation might be entirely different. But there was no evidence indicating that Allied Radio Shack's policy precluded this conduct. To the contrary, the only evidence bearing on the employer's policy was Rogers's testimony that some other managers did the same thing. Finally, regarding the petty cash matter, this never rose above a bare allegation. There was absolutely no evidence that Rogers by negligence or otherwise caused or contributed to a shortage.

The administrative record, therefore, is devoid of evidentiary support for the Employment Security Administration's determination that appellant Rogers was guilty of misconduct causing his discharge.

> *Judgment reversed and case remanded for the entry of a judgment reversing the Board of Appeals.*
> *Appellee to pay the costs.*