625 A.2d 914

MARYLAND STATE POLICE

v.

John M. ZEIGLER.

No. 9, Sept. Term, 1991.

Court of Appeals of Maryland.

June 7, 1993.

Diane Krejsa, Asst. Atty. Gen., Baltimore, argued and on brief (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Betty A. Stemley, Asst. Atty. Gen., Pikesville, on brief), for petitioner.

Byron L. Warnken and David L. Moore, Baltimore, argued, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

The issue before us in this case is whether an administrative agency may reopen a contested case, after the hearing and after beginning its deliberations but before rendering a decision, in order to take additional testimony.

## I.

John M. Zeigler is a first sergeant in the Maryland State Police (MSP). During 1986 and 1987, he was assigned to its Training Division as an instructor at the Police Academy.

On the evening of December 18, 1986, Zeigler stopped by the Police Academy to retrieve a forgotten item. While at the Academy he looked for, but could not find, Corporal

Barry L. Smith, the Academy Duty Officer. He also discovered that one of the trainees at the Academy, Trooper Probationer Susan Lutz, was missing. Zeigler called First Lieutenant Stephen Geppi, and then Captain Patrick Bucher, and learned that neither officer had given Smith permission to leave his post.[1]

Captain Bucher told Zeigler that he should make a note of the incident and that they would discuss it in the morning. Zeigler hand wrote a report about the incident and submitted it the next morning, December 19, 1986, to Second Lieutenant J. Scott Whitney, his immediate supervisor. The report stated as follows:

"The duty officer tour begins at 4:00 p.m. on the date one is scheduled and continues until 8:00 a.m. on the following day.

"On December 18, 1986, Cpl. B.L. Smith was scheduled as the duty officer for the Police Academy. This writer arrived at the Academy at approximately 8:00 p.m. to pick up some forgotten items. Shortly after arriving, it was brought to my attention by Tpr. (P) Hollister, 92nd recruit class, that a classmate was missing and the whereabouts of that classmate, as well as Cpl. Smith, were unknown.

"A check was made of the compound for Cpl. Smith with negative results. Further investigation into the matter revealed that Cpl. Smith had been missing since approximately 7:30 p.m. Contact was made with Captain Bucher, Commander of the Training Division, and he was apprised of the situation. A message was then left by this writer for Cpl. Smith to contact Capt. Bucher upon his return."

Later that day, Zeigler was in the barracks in the room which he shared with Smith. Zeigler came across a note

---

1. A police employee may not leave his or her post without proper authorization. Maryland State Police Administrative Manual, Chapter 5, Section I, Subsection 28–4. The Maryland State Police Administrative Manual will sometimes hereinafter be referred to as the "MSP Manual."

addressed to Smith from Lutz concerning a planned rendez-vous between them. Zeigler left the note where he found it. That evening, Zeigler asked Smith where he had been the previous night. Smith told Zeigler that he had been out to dinner with Lutz and her family. Smith also told Zeigler that he and Lutz were romantically involved and planned to marry.

At a party that evening, Lieutenant Whitney observed Smith and Lutz holding hands. Whitney initiated an investigation into the entire incident, and asked Zeigler to write a report detailing his knowledge of Smith's unauthorized absence.[2] On December 24, 1986, Zeigler submitted a typed version of the report which he had first submitted on December 19. Zeigler did not add any of the subsequently discovered information regarding Smith's whereabouts or about Smith's romance with Lutz.

As part of his investigation, Whitney served Smith with a "Notification of Complaint" regarding his unauthorized absence and his relationship with a trainee, and asked him to prepare a report. Smith prepared the report as requested. Several days later, however, Captain Bucher instructed Smith to complete another report, this time addressing only the unauthorized absence. Bucher expressed concern that Smith's rights had been violated by some aspects of the investigation into his romantic involvement with Lutz. Smith signed a new report which did not discuss the romantic involvement issue.

Bucher asked Zeigler to prepare an addendum (called an "indorsement") to Smith's new report. This indorsement stated as follows:

---

**2.** The purpose of the investigation was to determine whether Smith had violated sections in the MSP Manual providing that a police employee may not engage in sexual relations or other immoral conduct which has the potential to compromise the employee's ability to perform as a law enforcement officer or to cause the agency to be brought into disrepute. MSP Manual, Chapter 5, Section I, Subsections 3–1 and 8–0.

"On December 18, 1986 Cpl. B.L. Smith was scheduled to be the Police Academy Duty Officer and was to be on the Headquarters compound from 1600 hours on December 18th through 0800 hours on December 19, 1986.

"On December 18, 1986 at 2000 hours, I arrived at the Police Academy and was unable to locate Cpl. Smith. I soon learned that one of the recruits, Tpr. (P) Susan Lutz, was also missing from the compound.

"At approximately 2030 hours, I contacted 1/Lt. Geppi at his residence and learned that he neither gave Cpl. Smith permission to leave the compound nor knew of Cpl. Smith's whereabouts. I then contacted Captain Bucher and advised him of the situation.

"On December 19, 1986, I spoke with Cpl. Smith regarding his whereabouts the previous evening. Cpl. Smith replied that he left the compound for approximately two hours to eat dinner with Tpr. (P) Lutz and her family. Cpl. Smith further explained that a romantic relationship had developed between him and Lutz and that it was his intention to marry her.

"It is my feeling that Cpl. Smith committed a serious violation by leaving his assignment, and that he should be disciplined accordingly. I have attached an appropriately completed MSP Form 181 (Notification of Charges)."

Captain Bucher submitted Smith's revised report and Zeigler's indorsement to Lieutenant Colonel James A. Jones, Chief of the Services Bureau. No mention was made of Smith's initial report or of other information about Smith's romance with Lutz.

In February 1987, Zeigler discussed the whole matter with Captain W.R. Presley, Commander of the Staff Inspections Unit. Zeigler revealed that Smith had made a prior report which disclosed information about his romance with Lutz. Presley, apparently suspecting a cover-up of charges stemming from the romance, initiated an investigation into the Training Division's handling of the Smith matter.

On March 3, 1987, and March 16, 1987, Zeigler was interrogated by Captain Terrance B. Sheridan in connection with this secondary investigation. During the interrogation, Sheridan showed Zeigler the indorsement which he had submitted on January 7th and asked if Zeigler had submitted any other report. Zeigler answered that he had not. In fact, Zeigler had submitted the original December 19th report in addition to the indorsement.

Subsequently, Zeigler was charged with four violations of the MSP administrative regulations. He was alleged to have knowingly given a false response to Captain Sheridan's question during the interrogation, which constituted a violation of the prohibition against submission of a false report.[3] He was alleged to have failed to include all relevant information in his report, in violation of the prohibition against the submission of an incomplete report.[4] He was accused of interfering with the investigation into Smith's alleged misconduct by instructing a witness not to discuss the case with the investigators.[5] Finally, he was charged

---

3. Chapter 5, Section I, Subsection 15–4 of the MSP Manual provides:

"All reports submitted by employees of this Agency will be truthful; no employee shall knowingly report or cause to be reported any false information. A clear distinction must be made between reports which contain false information and those which contain inaccurate or improper information. To prove by a preponderance of evidence that one has submitted a false report, evidence must be presented for consideration that such report is designedly untrue, deceitful, or made with the intent to deceive the person to whom it was directed."

4. Chapter 5, Section I, Subsection 15–5 of the MSP Manual provides in part:

"All reports submitted by employees of this Agency will be complete and will not contain improper or inaccurate information."

5. Chapter 5, Section I, Subsection 19–2 of the MSP Manual provides in part:

"An employee shall not interfere with cases assigned to other employees for investigation without consent, except by order of superior officer, nor shall he [sic] interfere with the operation of a bureau, division, section, or unit."

with neglecting his duty by not taking appropriate action to bring Smith's conduct to the agency's attention.[6]

Initially, a five member hearing board was convened to hear the charges against Zeigler and charges against Lt. Geppi and Capt. Bucher. Zeigler successfully brought an action in the Circuit Court for Baltimore County to have a separate, three member hearing board established. *See* Maryland Code (1957, 1992 Repl. Vol.), Art. 27, § 734.

The hearing before the three member board commenced on September 22, 1988. The board heard opening statements from each party, testimony from five MSP witnesses, testimony from eight defense witnesses, testimony from one MSP witness in rebuttal, and closing statements from each party. The board received a total of eighteen exhibits into evidence. After the two-day hearing, the board adjourned to deliberate.

Approximately three and a half hours later, the board reconvened and made the following statement:

> "Gentlemen, we have been in deliberation for some time now. We have spent our time reviewing the evidence and testimony that has been given so far in this case. It is the opinion of this board, of each member of this board, that there are additional witnesses who have not been called to this hearing who have evidence or testimony to give which is pertinent to this matter. We feel that it is in the best interest of the defendant and the agency, and in the best interest of fairness for the board to call additional witnesses to this hearing."

The board then announced that it would call Lieutenant Colonel J.A. Jones, Lieutenant Colonel Frank Mazzone, and someone from the personnel department, as additional witnesses. Zeigler's attorney objected to this procedure, stat-

---

6. Chapter 5, Section I, Subsection 28–3 of the MSP Manual provides:
"The failure of a police officer to take appropriate action, either on or off duty, on the occasion of a crime, disorder or other condition deserving police or agency administrative attention is considered neglect of duty."

ing that it was the duty of the board to decide the case based on the evidence presented by the parties, and that it was highly unusual and unfair for the board to call additional witnesses. The board noted his objection and adjourned.

In the interim before the hearing reconvened, Zeigler filed a written "Motion for Reconsideration," urging the board to reconsider its decision to call additional witnesses. The board reconvened about a month later, on October 18, 1988. At that time, the board allowed Zeigler's attorneys to argue in support of the Motion for Reconsideration. After argument from both sides, the board denied the motion. The chairman of the board stated:

"The board has discussed the argument put forth by ... [First Sergeant] Zeigler. [Counsel], I assure you this board is interested in fairness and the perception of fairness. That is the only reason that we adjourned back on September the 23rd and decided to call additional witnesses. We are concerned with the fairness, and if [First Sergeant] Zeigler walks out of here today, that he be—have been given a fair and impartial trial, and the verdict be one that can be viewed as fair and impartial by anyone who views it, particularly [First Sergeant] Zeigler.

\* \* \* \* \* \*

"As the board goes, we realize that we are going to decide this case on the facts that have been presented to it. We realize that we do have a job to determine whether the charges should be sustained or not, and most importantly, we have the responsibility to be fair. We are not here to uphold the Maryland State Police, its charges, or what it, or anyone else, wants done, or what the prosecution wants done, or what the defense wants done. We are here to come to a fair determination of the charges that have been placed against [First Sergeant] Zeigler, irrespective of all the other things that may go on, or any summary issues surrounding this incident.

"It is toward this end that we will proceed with this hearing. We are going to reiterate that we denied the

motion, and we are going to call [Lieutenant Colonel] Jones...."

The board called Lieutenant Colonel Jones as a witness, and the board's chairman conducted the direct examination. The only part of the board's examination of Jones which was relevant to the charges against Zeigler was as follows. The chairman asked Jones: "When you were given the report about the AWOL situation, were you given information about ... Zeigler discovering Smith being AWOL and Zeigler's actions as a result of that?" Jones responded: "That's right. In fact, I commended—I told [Captain] Bucher to commend [First Sergeant] Zeigler because I think he did exactly the right thing. He had tried to contact Bucher, I believe, and did contact [Lieutenant Geppi], and I think that the AWOL situation, [First Sergeant] Zeigler handled admirably."

Both the MSP and the defense then cross-examined Jones. No other witness was called by the board or by either party. The record indicates that Lieutenant Colonel Frank Mazzone, whom the board had earlier announced would be a witness, was unavailable. After statements by counsel for the MSP and the defense, the board again retired to deliberate.

At the conclusion of further deliberations, the board acquitted Zeigler of three of the charges but sustained the charge that Zeigler had submitted a false report. The board, by a vote of two to one, found that Zeigler had told Captain Sheridan that he had filed only one report and that, in fact, Zeigler had filed two reports, one on December 19th and one on January 7th.[7] The board recommended that a penalty be imposed of three days suspension and two days loss of regular leave. The Superintendent of the MSP

---

7. One member of the board dissented from this finding and filed a minority report. This member dissented on the ground that there was insufficient evidence that Zeigler's statement (that he had made only one report) was "designedly untrue, deceitful, or made with the intent to deceive the person to whom it was directed."

reviewed the board's findings and recommendations, and heard argument from Zeigler's counsel. On November 21, 1988, the Superintendent issued a final order concurring with the board's findings and imposing the board's proposed penalty. The final order further provided that the penalty would be held in abeyance for one year and that, if after one year there were no similar charges against Zeigler, the penalty would be vacated.

Zeigler filed an action for judicial review in the Circuit Court for Baltimore County, arguing that the board's reopening for additional evidence, after having begun deliberations, was improper. Zeigler also challenged the administrative decision on other grounds. The circuit court held that the "board acted inappropriately by taking additional testimony after retiring to deliberate." The court stated that the board should have made its decision based on the evidence initially before it. The circuit court reversed the board's decision, and, declining to remand the case for additional proceedings, ordered the board to enter a finding of "not sustained" as to the charge. The circuit court did not reach Zeigler's other grounds of complaint.

The MSP appealed to the Court of Special Appeals which affirmed the judgment of the circuit court. *State Police v. Zeigler*, 85 Md.App. 272, 583 A.2d 1085 (1991). The Court of Special Appeals took the position that the board's reopening of the hearing after deliberations had begun was improper on two grounds, stating (85 Md.App. at 276, 583 A.2d at 1087):

> "We hold (1) that it was an abuse of discretion to reopen this case for additional testimony, and (2) that it was a denial of due process to seek further evidence when appellant failed to meet its burden of proof."

With regard to its abuse of discretion holding, the intermediate appellate court, citing out-of-state cases involving criminal and civil judicial trials, held that whether a proceeding should be reopened for additional evidence, after deliberations have begun, is within the discretion of the trial

court or agency. Relying upon cases involving reopenings during jury deliberations, however, the Court of Special Appeals stated that " 'the power to reopen a case for additional proof [during deliberations] must be exercised with the utmost caution.' " 85 Md.App. at 280, 583 A.2d at 1089, quoting from *People v. Olsen,* 34 N.Y.2d 349, 357 N.Y.S.2d 487, 490, 313 N.E.2d 782, 784 (1974). The Court of Special Appeals, again referring to the *Olsen* case (which involved reopening during jury deliberations), went on to identify two problems involved in reopening a case after deliberations have begun (85 Md.App. at 281, 583 A.2d at 1090):

> "The court [in *Olsen*] cited some of the specific potential damages involved in reopening. One concern is that the finality of the trial process be preserved. Even more compelling than an orderly trial process is a second consideration, that new evidence introduced during jury deliberations may acquire ' " 'undue emphasis * * * with consequent distortion of the evidence as a whole.' " ' *Id.* 357 N.Y.S. at 490, 313 N.E.2d at 784 (quoting *Eason v. United States,* 281 F.2d 818, 822 (9th Cir.1960). This is likely to be prejudicial to the party against whom the evidence is brought. *Olsen,* 357 N.Y.S.2d at 490, 313 N.E.2d at 784; *Eason,* 281 F.2d at 822.

> "We share the concerns raised by the *Olsen* court. There must be a finality to the fact-finding process. Had the Board asked for new evidence at the close of the arguments, we would not have been disposed to regard that as an abuse of discretion. It is quite a different matter to begin deliberations and then to ask for more evidence. This is at odds with orderly, efficient decision making.

> "We are persuaded even more by the second consideration raised by *Olsen,* the fear that undue emphasis will be given to the new evidence. Had the fact-finder in this case been a judge, greater reliance could be placed on the judge's ability to evaluate the new evidence objectively, without placing any undue emphasis on its value. Here,

the tribunal was composed of three lay persons, and their ability to evaluate the weight of the new evidence was much less certain."

The Court of Special Appeals also criticized the board because the agency "gave almost no explanation" for "its wish to hear additional testimony." 85 Md.App. at 282, 583 A.2d at 1090. The appellate court then concluded that "it was an abuse of discretion for the board to reopen for additional evidence during deliberations." *Ibid.*

Turning to the alternate ground for its decision, the Court of Special Appeals agreed with the trial court's statement that the board's failure " 'to return decisions on each of the counts after initial deliberations forces this court to conclude that the charges were not sufficiently proven,' " 85 Md.App. at 282, 583 A.2d at 1091. The appellate court went on to state that, since the evidence, prior to reopening, was not deemed sufficient by the board to convince it of Zeigler's guilt on all charges, "fundamental fairness demanded that they find him not guilty" and that "it was unfair to seek further evidence," 85 Md.App. at 283, 583 A.2d at 1091. The Court of Special Appeals concluded (85 Md.App. at 284, 583 A.2d at 1091):

"Due process of the law and fundamental fairness mandate that where evidence is not sufficient in the eyes of the fact-finder to meet the burden of persuasion required on that issue, then the proponent of that issue has failed to meet its burden and the deliberations must cease. The fact-finder ought not solicit further evidence."

Because the Court of Special Appeals agreed with the trial court that the board's reopening of the hearing was improper, the appellate court, like the trial court, did not reach Zeigler's other arguments for reversal of the administrative decision.

The MSP filed in this Court a petition for a writ of certiorari, challenging the holdings below concerning the board's reopening of the administrative hearing. Zeigler did not file a cross-petition or a conditional cross-petition for

a writ of certiorari. In light of the importance of the reopening question to the functioning of state and local administrative agencies in Maryland, we granted the MSP's certiorari petition, 322 Md. 644, 589 A.2d 73.

## II.

■ The MSP is a state administrative agency subject to the requirements of the Administrative Procedure Act (APA), Code (1984, 1992 Cum.Supp.), §§ 10–101 through 10–405 of the State Government Article. As a law enforcement officer, Zeigler is entitled to the protections of the Law Enforcement Officer's Bill of Rights (LEOBOR), Code (1957, 1992 Repl. Vol.), Article 27, §§ 727 through 734D. The LEOBOR requires that a law enforcement agency provide an officer with notice and a hearing before taking punitive action against the officer.[8] As the entitlement to a hearing brings this case within the definition of a "contested case" under the APA, Zeigler is also entitled to the protections afforded by the contested case provisions of the APA.[9] *Sugarloaf v. Waste Disposal,* 323 Md. 641, 651–653, 663–668, 594 A.2d 1115, 1119–1120, 1126–1128 (1991).

The APA provides that an agency must "give all parties in a contested case an opportunity for a hearing after

---

**8.** Article 27, § 730(a), provides as follows:

"If the investigation or interrogation of a law enforcement officer results in the recommendation of some action, such as demotion, dismissal, transfer, loss of pay, reassignment, or similar action which would be considered a punitive measure, then ... before taking that action, the law enforcement agency shall give notice to the law enforcement officer that he is entitled to a hearing on the issues by a hearing board. The notice shall state the time and place of the hearing and the issues involved. An official record, including testimony and exhibits, shall be kept of the hearing."

**9.** Section 10–201(c) of the State Government Article states in pertinent part as follows:

" 'Contested case' means a proceeding before an agency to determine:

(1) a right, duty, statutory entitlement, or privilege of a person that is required by law to be determined only after an opportunity for an agency hearing."

reasonable notice." § 10–205 of the State Government Article. The agency must allow each party in a contested case to present evidence for the record, § 10–208(a)(1), and the agency may also present evidence for the record. § 10–208(a)(2). The agency may only consider evidence that is part of the record in making its decision. § 10–209. The LEOBOR contains similar provisions, and also entitles a law enforcement officer to a hearing before a hearing board.[10] Art. 27, § 730(d). Neither statute contains a provision dealing with the authority of an agency to reopen a case for additional evidence after the hearing has concluded. Zeigler has not contended, and the courts below did not hold, that the board violated any particular section of either statute. Instead, Zeigler's arguments and the courts' holdings are based on Maryland common law principles of administrative law and on principles of due process.

We shall first address the holding of the Court of Special Appeals that, as a matter of Maryland administrative law, the board's decision should be reversed because the board abused its discretion by reopening the case for additional evidence after deliberations had commenced. Next, we shall turn to the Court of Special Appeals' alternate holding that the reopening violated due process of law.

### A.

The Court of Special Appeals' holding that the board abused its discretion in reopening the hearing was, as

---

10. Article 27, § 727(d)(1) defines a "hearing board" as:
"A board which is authorized by the chief to hold a hearing on a complaint against a law enforcement officer and which consists of not less than three members, ... all to be appointed by the chief and selected from law enforcement officers within that agency, or law enforcement officers of another agency with the approval of the chief of the other agency, and who have had no part in the investigation or interrogation of the law enforcement officer. At least one member of the hearing board shall be of the same rank as the law enforcement officer against whom the complaint has been filed."

previously indicated, based entirely upon cases dealing with the reopening of the evidentiary portion of judicial trials. With regard to trials, Judge Chasanow recently pointed out for the Court that a "trial judge has wide discretion in the conduct of a trial" and that the "reopening of a case is within the trial judge's discretion" in this regard. *Hunt v. State*, 321 Md. 387, 405, 583 A.2d 218, 227 (1990), *cert. denied*, — U.S. —, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991). More recently, in *Dyson v. State*, 328 Md. 490, 500, 615 A.2d 1182, 1186–1187 (1992), Judge McAuliffe for the Court explored the matter in detail:

> "Generally, trial judges have broad discretion to reopen a case to receive additional evidence. *Hunt v. State*, 321 Md. 387, 405–06, 583 A.2d 218 (1990), *cert. denied*, — U.S. —, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991); *Guilmore v. State*, 263 Md. 268, 290, 283 A.2d 371 (1971), *vacated in part*, 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763 (1972). We have not heretofore considered, however, the issue presented by this case—whether a case may be reopened to permit additional evidence after the jury has begun its deliberations."

> \* \* \* \* \* \*

> "The majority of courts considering this issue have concluded ... that the interest of justice requires that the trial judge be given some discretion to permit receipt of additional evidence after jury deliberations have begun, but that this discretion is significantly limited and should be exercised with great caution."

Specifically addressing reopening during *jury* deliberations, and after reviewing numerous jury trial cases in various jurisdictions, including the opinion of the New York Court of Appeals in *People v. Olsen, supra*, Judge McAuliffe stated (328 Md. at 502–503, 615 A.2d at 1188):

> "We agree that a trial judge must exercise the utmost caution in reopening a case to allow the introduction of additional evidence after the jury has begun deliberating. As the Court of Appeals of New York pointed out, the

presentation of evidence must come to an end at some time, and the parties must be forewarned that the desirability of maintaining an orderly trial process militates strongly against receiving evidence at that stage of the trial. A premium must necessarily be placed on preparation and diligence, and evidence which is simply the product of an afterthought, no matter how pertinent it may have been if timely offered, will not, except in the most extraordinary circumstances, be received at this late stage of the proceedings. There is, of course, the very strong probability that evidence offered at this point will be given undue emphasis or prominence by the trier of fact. Moreover, if the evidence is at all disputed or controversial, fair opportunity must be afforded for cross-examination and rebuttal. And it may be difficult, if not impossible, to permit effective argument concerning additional evidence without permitting an entire set of new closing arguments."[11]

The Court of Special Appeals in the case at bar reviewed the board's reopening of the hearing in the same manner as an appellate court reviews a decision to reopen the evidentiary portion of a trial during jury deliberations. The intermediate appellate court refused to accord to the board the same broad discretion to reopen that is generally given to trial courts in situations other than reopenings during jury deliberations. In fact, the Court of Special Appeals expressly indicated that if the board had not been "composed of three lay persons" whose "ability to evaluate the weight of the new evidence was much less certain" than a judge's ability (85 Md.App. at 281, 583 A.2d at 1090), it would not have found an abuse of discretion. No authority was cited, and we are aware of none, which supports the Court of Special Appeals' viewpoint. Rather, the intermedi-

---

11. As previously mentioned, in the case at bar the board did afford an opportunity for cross-examination of the only witness who testified at the reopened hearing and did allow new closing arguments by counsel. After the witness testified, neither Zeigler nor the MSP indicated any desire to offer rebuttal testimony.

ate appellate court's position is contrary to settled principles of administrative law.

 Although no case has been called to our attention which is factually identical to the present case, it is an established principle that an administrative agency has broad discretion to consider evidence submitted after the close of an evidentiary hearing as long as there is compliance with procedural due process. *See, e.g., Schultz v. Pritts,* 291 Md. 1, 7–10, 432 A.2d 1319, 1323–1324 (1981) (documentary evidence submitted to the agency several days after the hearing but before the agency's decision); *Montgomery Co. v. Supervisor,* 275 Md. 58, 62–63, 337 A.2d 679, 681–682 (1975) (reopening, after the initial hearing but before the final decision, was appropriate to allow intervenor to present evidence); *Mont. Co. v. Nat'l Capital Realty,* 267 Md. 364, 375–376, 297 A.2d 675, 681–682 (1972) (documentary evidence submitted to and considered by the agency after the hearing). *See also, e.g., Dal Maso v. Bd. of Co. Comm'rs,* 238 Md. 333, 337, 209 A.2d 62, 65 (1965); *Temmink v. Bd. of Zoning Appeals,* 205 Md. 489, 497, 109 A.2d 85, 88–89 (1954); *Tidewater Express Lines, Inc. v. United States,* 278 F.Supp. 561, 566–567 (D.Md.1968).

 The discretion of an administrative agency to admit evidence after the hearing is arguably broader than the discretion that is generally accorded to trial judges, since one of the reasons given for the wide discretion of an agency to admit post-hearing evidence is that "administrative agencies are not generally bound by the . . . common-law rules of evidence." *Mont. Co. v. Nat'l Capital Realty, supra,* 267 Md. at 376, 297 A.2d at 681–682. *See Dal Maso v. Bd. of Comm'rs, supra,* 238 Md. at 337, 209 A.2d at 65.

Moreover, as long as an administrative agency's exercise of discretion does not violate regulations, statutes, common law principles, due process and other constitutional requirements, it is ordinarily unreviewable by the courts. *See, e.g., Dep't of Nat. Res. v. Linchester,* 274 Md. 211, 225, 334 A.2d 514, 525 (1975) ("the judiciary is constitutionally 'without

authority to interfere ... with the lawful exercise of administrative ... discretion,'" quoting *Heaps v. Cobb,* 185 Md. 372, 379, 45 A.2d 73, 76 (1945)); *Balto. Import Car v. Md. Port Auth.,* 258 Md. 335, 342, 265 A.2d 866, 869 (1970) ("when an administrative agency is vested with discretion, and exercises it within the scope of its authority, the courts will not intervene"). It is only when an agency's exercise of discretion, in an adjudicatory proceeding, is "arbitrary" or "capricious" that courts are authorized to intervene. *See generally, e.g.,* § 10–215(g)(3)(vi) of the State Government Article; *Dep't of Nat. Res. v. Linchester, supra,* 274 Md. at 224, 334 A.2d at 525; *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 501, 331 A.2d 55, 71 (1975). *See also Tidewater Express Lines, Inc. v. United States, supra,* 278 F.Supp. at 566–567 ("re-openings before administrative bodies are addressed to their sound discretion and only a showing of the grossest abuse of discretion justifies the interference of the court").

Consequently, the discretion of administrative agency to reopen a hearing for additional evidence is as broad, if not broader, than the usual discretion of a trial judge. The Court of Special Appeals erred in analogizing the board's reopening here to the reopening of a trial during jury deliberations.

█ The only reasons given by the Court of Special Appeals for its conclusion that the board "abused its discretion" in reopening the hearing were that the board was composed of lay persons who might give undue weight to the additional evidence and that the board gave an insufficient explanation for its desire to hear additional evidence. The first of these reasons does not relate to this particular case; it simply furnished the basis for the Court of Special Appeals' erroneous decision that an agency has very limited discretion to reopen after the hearing but before the decision. As to the second reason, the board, in announcing its decision to reopen, indicated that it was concerned with fairness to Zeigler, the board's responsibilities, and its abili-

ty to reach a fair decision on all of the charges. The board said nothing to justify a conclusion that its desire for additional evidence was unreasonable. Considering all of the circumstances, the board's decision to reopen the hearing was clearly not arbitrary or capricious.

## B.

■ Procedural due process, guaranteed to persons in this State by Article 24 of the Maryland Declaration of Rights, requires that administrative agencies performing adjudicatory or quasi-judicial functions observe the basic principles of fairness as to parties appearing before them. *See, e.g., Schultz v. Pritts, supra,* 291 Md. at 7, 432 A.2d at 1323; *Ottenheimer Pub. v. Employ. Sec. Adm.,* 275 Md. 514, 520, 340 A.2d 701, 704 (1975); *Rogers v. Radio Shack,* 271 Md. 126, 129, 314 A.2d 113, 115 (1974); *Dal Maso v. Bd. of Co. Comm'rs, supra,* 238 Md. at 337, 209 A.2d at 65. *See also Heft v. Md. Racing Comm'n,* 323 Md. 257, 270–272, 592 A.2d 1110, 1116–1118 (1991), and authorities there cited.

Specifically with respect to evidence which is received by an administrative agency after the close of the hearing and which is relied on by the agency, we have held that due process ordinarily requires that an opportunity for cross-examination and/or rebuttal be provided. *Schultz v. Pritts, supra,* 291 Md. at 7, 432 A.2d at 1323 ("When an administrative agency relies upon evidence submitted after the close of a hearing, due process may be violated if no opportunity is provided to challenge the evidence by cross-examination or rebuttal"); *Rogers v. Radio Shack, supra,* 271 Md. at 129, 314 A.2d at 115 ("with no opportunity for cross-examination or rebuttal, fundamental fairness would preclude reliance upon the [subsequently received] report by an administrative agency"); *Temmink v. Bd. of Zoning Appeals, supra,* 205 Md. at 497, 109 A.2d at 89 (holding that where a party had no opportunity to challenge evidence relied upon by the agency, the case would be remanded to the agency for a further hearing at which "the parties may

produce any further evidence and have the right of cross-examination").

■ As earlier discussed, in the present case, after the direct testimony of the witness Jones at the reopened hearing, the parties were given an opportunity to, and did in fact, cross-examine the witness. They were given an opportunity to present rebuttal evidence, although neither side desired to present additional evidence. They were allowed additional closing arguments. The board fully complied with the due process requirements concerning subsequent evidence which are set forth in our cases. *See Dal Maso v. Bd. of Co. Comm'rs, supra,* 238 Md. at 337, 209 A.2d at 65, where this Court stated:

> "In general, administrative agencies ... must observe the basic rules of fairness as to parties appearing before them.... We have held that where a county Board of Zoning Appeals relied on a requested report of the County Planning Commission made after the hearing, the case had to be remanded for a further hearing at which the report could be introduced in evidence, and its findings challenged. *Temmink v. Bd. of Zoning Appeals,* 205 Md. 489, 496–7, 109 A.2d 85 (1954). See also *Dembeck v. Shipbuilding Corp.,* 166 Md. 21, 170 Atl. 158 (1934).... When the party appearing before the board has the opportunity ... to examine and challenge the report in question before the board reaches its conclusion, the requisite of procedural fairness has been met. See *Duncan v. McNitt Coal Co.,* 212 Md. 386, 396, 129 A.2d 523 (1957).... In this case, the appellant had such an opportunity."

Likewise, in the case at bar, the requisite procedural fairness has been met.

Nevertheless, according to Zeigler and both courts below, the board's reopening and receipt of Jones's testimony constituted a denial of due process because the board's action implied that the charges were not sufficiently proven prior to the reopening, that Zeigler therefore should have

been found "not guilty" at the conclusion of the principal hearing, and that "it was unfair to seek further evidence" to enable the MSP to meet its "burden of persuasion." 85 Md.App. at 283, 583 A.2d at 1091.

Assuming arguendo that the board may have believed that the evidence against Zeigler at the conclusion of the principal hearing was insufficient, that Jones's testimony was adverse to Zeigler, and that Jones's testimony allowed the board to find that one of the charges had been sustained, there would be no merit to the theory that Zeigler would have been denied procedural due process. The decisions in cases upholding the authority of administrative agencies to rely on post-hearing evidence, as long as there exists opportunity for cross-examination and rebuttal, do not depend upon which side the additional evidence supports or upon the weight of the additional evidence compared with the evidence at the initial hearing. No case has been called to our attention in which a court, based upon the theory espoused by Zeigler and the courts below, have held that an administrative agency has denied a party procedural due process. Under the decisions of this Court, the board was entitled to rely upon the post-hearing evidence in light of the ample opportunity for cross-examination and rebuttal.

Alternatively, we do not believe that the assumptions underlying Zeigler's due process argument are sound. Nothing in the board's statements to the parties concerning the board's desire to reopen the hearing, and nothing in the witness Jones's testimony, necessarily leads to the inferences drawn by Zeigler and by the courts below. It may well be that the board desired additional testimony with regard to the three charges on which Zeigler was ultimately acquitted. There is no indication that the board desired additional evidence to bolster the MSP's case on the false statement charge. In addition, the witness Jones's testimony did not assist the MSP's case. Rather, his testimony appeared to be entirely favorable to Zeigler. Instead of the scenario assumed by Zeigler and the courts below, it is just as likely

that the only effect of Jones's testimony was to contribute to the acquittals on three of the charges and to the relatively minor recommended sanction on the fourth charge.

For two reasons, therefore, we reject Zeigler's argument that the reopening of the hearing deprived him of due process of law.

### III.

As earlier mentioned, Zeigler raised in the courts below additional arguments which were not reached by either the circuit court or the Court of Special Appeals. He argued that the charge sustained against him is equivalent to a charge of fraud, and that, therefore, the board should have found guilt by a clear and convincing evidence standard instead of utilizing a preponderance of the evidence standard. He also argued that the charging document was insufficient.

In addition, Zeigler asserted that the charge which was sustained requires that the false statement be made "knowingly" and that the MSP is required to present evidence that the false statement "is designedly untrue, deceitful, or made with the intent to deceive the person to whom it was directed." Chapter 5, Section I, Subsection 15–4 of the MSP Manual, quoted in footnote 3, *supra*. Zeigler argued that the board failed to make findings regarding the presence of the requisite state of mind. *See, e.g., Mossburg v. Montgomery County*, 329 Md. 494, 507–508, 620 A.2d 886, 893 (1993); *Harford County v. Preston*, 322 Md. 493, 505, 588 A.2d 772, 778 (1991). Zeigler further argued that, to the extent that the board's opinion as a whole might be construed implicitly to contain the necessary findings, such findings are not supported by "substantial evidence in light of the entire record." *See* § 10–215(g)(3)(v) of the State Government Article.

The above-reviewed arguments were made again by Zeigler in his brief in this Court, and the MSP's briefs respond to them on the merits. Nonetheless, these issues

were not raised in the MSP's petition for a writ of certiorari, and Zeigler did not file a cross-petition or conditional cross-petition raising them. This Court "ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review." Maryland Rule 8–131(b). *See, e.g., Batson v. Shiflett,* 325 Md. 684, 700–701, 602 A.2d 1191, 1199–1200 (1992), and cases there cited; *Gonzales v. State,* 322 Md. 62, 69, 585 A.2d 222, 226 (1991); *Stinnett v. Cort Furniture,* 315 Md. 448, 452 n. 2, 554 A.2d 1226, 1227 n. 2 (1989); *Wagner v. Doehring,* 315 Md. 97, 103 n. 4, 553 A.2d 684, 687 n. 4 (1989). *See also* the discussion in *Robeson v. State,* 285 Md. 498, 501–504, 403 A.2d 1221, 1223–1224 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

Consequently, we shall order that the case be remanded to the circuit court so that it may thoroughly address these issues.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT JOHN M. ZEIGLER.*

ROBERT M. BELL, Judge, dissenting.

This case presents two questions: (1) whether, in reopening the case,[1] after deliberations have begun, to take additional testimony, the administrative agency abused its discretion and (2) whether the procedure followed by the

---

1. It is not at all clear from this record whether what was reopened was the prosecution's case or the defense's case. The hearing board specifically did not state whose case was being reopened and there is nothing else in the record that supplies that information.

agency in taking that additional testimony comported with the dictates of due process. These are separate and distinct inquiries. An affirmative answer to the former, in my opinion, is dispositive, requiring reversal of the administrative agency's decision. Only a negative answer to the first question will make necessary consideration of the latter.

The Court of Special Appeals articulated two reasons for affirming the judgment of the Circuit Court for Baltimore County, which reversed the decision of the hearing board. First, it held that it was an abuse of discretion for the hearing board to take additional testimony after it had begun its deliberations. As to that basis, analogizing the situation to that of a court reopening a case for the purpose of taking additional testimony after the jury had begun its deliberations and, noting that "[h]ad the fact-finding body in a criminal or civil case reopened for more evidence on the grounds that this case was reopened, it would have equalled an abuse of discretion, as indicated by the relevant persuasive authority," *Maryland State Police v. Zeigler*, 85 Md. App. 272, 280, 583 A.2d 1085, 1089 (1991),[2] the intermediate appellate court characterized the actions of the hearing board as a "violation of its fairness obligation, constituting an abuse of discretion." *Id.* The court also expressed concern that administrative proceedings, like trial proceedings, be finally resolved and that undue emphasis not be given to new evidence offered for the first time after the case has concluded and deliberations have begun. In that regard, the court noted that the hearing board consisted of lay persons, rather than judges, opining that the latter presumably could have placed the new evidence in the proper perspective. *Id.* at 281, 583 A.2d at 1090.

As to its alternate holding, the Court of Special Appeals was of the view that taking additional testimony after deliberating for more than three hours indicated that the hearing board believed the evidence before it was insuffi-

---

**2.** The Court of Special Appeals relied most heavily on *People v. Olsen*, 34 N.Y.2d 349, 357 N.Y.S.2d 487, 313 N.E.2d 782 (1974).

cient to convict the respondent and, hence, additional evidence was needed. The court noted that where that is the case, the proponent of the issue having failed to meet its burden, due process and fundamental fairness is violated. It concluded, therefore, that the process that was accorded the respondent in this case "deviated from 'previously declared rules' for adjudicating similar claims." *Id.* at 284, 583 A.2d at 1091.

The majority sees it quite differently. It says that, "considering all of the circumstances, the board's decision to reopen the hearing was clearly not arbitrary or capricious." Op. at 559. To reach that conclusion, it rejects, as unsound, the analogy to the reopening of the trial during jury deliberations. As to that, it says, while certainly no less broad, "[t]he discretion of an administrative agency to admit evidence after the hearing is arguably broader than the discretion that is generally accorded trial judges, since one of the reasons given for the wide discretion of an agency to admit post-hearing evidence is that 'administrative agencies are not generally bound by the ... common-law rules of evidence.' " Op. at 557 (citations omitted). The majority relies on administrative law cases in which the agency considered documentary evidence, filed in supplementation of the record after the hearing had concluded, but before the agency rendered its decision. *Schultz v. Pritts*, 291 Md. 1, 7–10, 432 A.2d 1319 (1981); *Montgomery Co. v. Supervisor*, 275 Md. 58, 62–63, 337 A.2d 679, 681 (1975); *Montgomery Co. v. Nat'l Capital Realty*, 267 Md. 364, 375–76, 297 A.2d 675, 681–82 (1972); *Dal Maso v. Bd. of County Comm'rs*, 238 Md. 333, 337, 209 A.2d 62, 65 (1965); *Temmink v. Bd. of Zoning Appeals*, 205 Md. 489, 497, 109 A.2d 85, 88–89 (1954); *Tidewater Express Lines, Inc. v. U.S.*, 278 F.Supp. 561, 566–67 (D.Md.1968).[3] Conse-

---

3. None of those cases addresses the issue *sub judice.* In *Schultz v. Pritts*, 291 Md. 1, 7–10, 432 A.2d 1319 (1981), all parties acquiesced in the submission of the documentary evidence after the close of the hearing. *See also Dal Maso v. Bd. of County Comm'rs*, 238 Md. 333, 337, 209 A.2d 62, 65 (1965). In *Montgomery Co. v. Supervisor*, 275

quently, the majority finds unpersuasive the reasons given by the Court of Special Appeals for concluding that the board's reopening of the hearing to take additional testimony was an abuse of its discretion. That the board was composed of lay persons, and not judges, the majority asserts, is an insufficient basis for holding that the agency's discretion to reopen a hearing is more limited after deliberations had begun, than before. Nor is the majority troubled by the reasons the board gave for reopening the hearing. Rejecting the argument and holding that they were inadequate, it is persuaded by the fact that "[t]he board said nothing to justify a conclusion that its desire for additional evidence was unreasonable." Op. at 559.

The majority also rejects the Court of Special Appeals's conclusion that due process had been denied the respondent. First, it notes that the proper inquiry, for due process purposes, is whether the procedure followed in the taking of additional testimony allowed the respondent a full opportunity to cross-examine and rebut the new evidence. Second, the majority finds no support in the record for the intermediate appellate court's conclusion that the desire for additional evidence was the product of the board's attempt to cure a perceived insufficiency of the evidence.

I will not quarrel with the majority's conclusion that the extent of an administrative agency's discretion to reopen a

---

Md. 58, 62–63, 337 A.2d 679, 681 (1975), the propriety of permitting intervention, not of reopening the case, was the issue. Indeed, in that case, we recognized, citing the "change of mind" rule, that an administrative agency may not reopen a case without a basis. *Id.*, at 62, 337 A.2d at 681. The thrust of the holding in *Mont. Co. v. Nat'l Capital Realty*, 267 Md. 364, 375–76, 297 A.2d 675, 681–82 (1972), was that it was not unfair to consider a final draft of a report submitted after the hearing closed, when the preliminary draft of that report, containing the same recommendation, had previously and timely been considered. Although the Court did note that due process procedural guarantees were lacking when the protestants were not afforded the opportunity to challenge the conclusion of a Planning Commission report submitted after the hearing concluded, the issue in *Temmink v. Bd. of Zoning Appeals*, 205 Md. 489, 497, 109 A.2d 85, 89 (1954), was not the propriety of reopening the zoning hearing to consider that report.

hearing after deliberations have begun may not be coextensive with that of a trial court and, indeed, may be broader. Nor am I troubled, in this case, by the majority's due process analysis, whether or not it is sound. I am persuaded, however, that the Court of Special Appeals correctly held that the board abused its discretion when it reopened the case to take additional evidence. An administrative agency acts arbitrarily and capriciously when sufficient bases for the reopening are not apparent on the record; no such bases are apparent on this record. Even though the analogy between administrative and judicial proceedings is not perfect, unlike the majority, I think it is permissible to review cases involving the exercise of judicial discretion to decide the present case.

Recently, in *Dyson v. State*, 328 Md. 490, 615 A.2d 1182 (1992), we considered the propriety of a trial judge allowing the introduction of evidence after the jury had begun its deliberations. After conducting a detailed survey of cases from across the country which have addressed the subject, our conclusion was that "the majority of courts considering this issue have concluded ... that the interest of justice requires that the trial judge be given some discretion to permit receipt of additional evidence after jury deliberations have begun, but that this discretion is significantly limited and should be exercised with great caution." *Id.* at 500, 615 A.2d at 1187. Expanding on that theme, we said:

> We agree that a trial judge must exercise the utmost caution in reopening a case to allow the introduction of additional evidence after a jury has begun deliberating. As the Court of Appeals of New York [4] pointed out, the presentation of evidence must come to an end at some time, and the parties must be forewarned that the desirability of maintaining an orderly trial process militates strongly against receiving evidence at that stage of the trial. A premium must necessarily be placed on preparation and diligence, and evidence which is simply the

4. *Olsen,* 34 N.Y.2d 349, 357 N.Y.S.2d 487, 313 N.E.2d 782.

product of an afterthought, no matter how pertinent it may have been if timely offered, will not, except in the most extraordinary circumstances, be received at this late stage of the proceedings. There is, of course, the very strong probability that evidence offered at this point will be given undue emphasis in prominence by the trier of fact. Moreover, if the evidence is at all disputed or controversial, fair opportunity must be afforded for cross-examination and rebuttal. And it may be difficult, if not impossible, to permit effective argument concerning additional evidence without permitting an entire set of new closing arguments.

There will, of course be those rare circumstances where this extraordinary relief should be granted. Where, for example a party has painstakingly laid a proper foundation for the introduction of an exhibit and all parties have assumed it is in evidence, but because of an oversight it was not formally offered and received, a trial judge would not err in receiving the exhibit and sending it to the jury. Or, as the Supreme Court of New Jersey speculated in *State v. Wolf,* [44 N.J. 176, 207 A.2d 670] at 677 [ (1965) ]:

Suppose while the jury was deliberating, the prosecutor returned to court with a third person who had just confessed to the shooting, and with some reputable eye witness to the killing who identified such person as the perpetrator, could it be said the court was powerless to reopen the defense and permit the jury to hear the new testimony?

328 Md. at 502–503, 615 A.2d at 1188. We were impressed by several factors identified by the Supreme Court of Appeals of West Virginia as valid considerations in guiding a trial judge's exercise of discretion in this regard:

Whether good cause is shown; whether the new evidence is significant; whether the jury would be likely to give undue emphasis, prejudicing the party against whom it is offered; whether the evidence is controversial in nature;

and, whether the reopening is at the request of the jury or a party.

328 Md. at 502, 615 A.2d at 1188, citing *State v. Thomas,* 179 W.Va. 811, 374 S.E.2d 719, 722 (1988).

As the majority points out, an administrative agency abuses its discretion, in the context of an adjudicatory hearing,[5] when it acts arbitrarily and capriciously. *Dept. of Natural Resources v. Linchester,* 274 Md. 211, 224, 334 A.2d 514, 525 (1975); *Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 501, 331 A.2d 55, 65–66 (1975). *See also* Maryland Code (1984) § 10–215(g)(3)(vi) of the State Government Article.[6] An action is arbitrary and capricious when it is based upon whim or caprice, *i.e.,* when the agency decision is unsupported by any evidence, *see Ins. Comm'r v. Nat'l Bureau,* 248 Md. 292, 300–301, 236 A.2d 282, 286 (1967); *Johnstown Coal & Coke Co. v. Dishong,* 198 Md. 467, 474, 84 A.2d 847, 850 (1951); *Heaps v. Cobb,* 185 Md. 372, 379–80, 45 A.2d 73, 76 (1945), or when it has no discernable rational basis. *Turner v. Hammond,* 270 Md. 41, 55–56, 310 A.2d 543, 551–52 (1973); *Montgomery County v. Anastasi,* 77 Md.App. 126, 138–39, 549 A.2d 753, 758 (1988). Whether a ruling is unsupported by evidence or is otherwise arbitrary and capricious necessarily depends upon the particular facts of the case under review. *Gianforte v.*

---

5. Judicial review of an adjudicatory decision is somewhat broader than of a legislative or quasi-legislative action. *Cromwell v. Jackson,* 188 Md. 8, 22, 52 A.2d 79, 86 (1947).

6. Maryland Code (1984) § 10–215(g)(3)(vi) of the State Government Article provides:

(g) *Decision.*—In a proceeding under this section, the court may:

\* \* \* \* \* \*

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

\* \* \* \* \* \*

(vi) is arbitrary or capricious.

*License Comm'rs.,* 190 Md. 492, 499, 58 A.2d 902, 906 (1948).[7]

Unless the basis upon which the agency acted is reflected in the record, directly or by rational inferences deducible from evidence in the record, the exercise of discretion by the agency cannot be upheld. Indeed, it cannot even be reviewed. This is so because, in that circumstance, the reviewing court could only assess the rationality of the agency's decision by resorting to blind faith and uncritical acceptance of the agency's good faith. Generalities, unlike specific reasons directly related to the case at issue, simply are not informative. They are, therefore, insufficient to provide a basis for taking additional evidence.

This is consistent with Maryland administrative law. Judicial review of agency action is conducted on the record made before the agency unless the court orders, § 10–215(e) and (f), or a statute permits, Maryland Rule B10, the taking of testimony to supplement the record. *Motor Vehicles Admin. v. Mohler,* 318 Md. 219, 233, 567 A.2d 929, 936 (1990); *Howard County v. Davidsonville Civic Ass'n,* 72 Md.App. 19, 47, 527 A.2d 772, 786, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987); § 10–210; Maryland Rule B7.[8]

Moreover, because the court reviews the agency's basis for decision, *Blue Bird Cab Co. v. Md. Dept. of Employment Sec.,* 251 Md. 458, 466, 248 A.2d 331, 335 (1968); *see also Baker v. Bd. of Trustees,* 269 Md. 740, 747, 309 A.2d 768, 771–72 (1973), in addition to being in writing or stated in the record, § 10–214(a), an agency decision must meet

---

7. The burden is on the proponent of the issue to show that the agency abused its discretion. That does not require that he or she do any more than place the record of the proceedings before the reviewing court and point out the absence of a basis in the record for the action complained about.

8. Rule B7.d., providing for a statement in lieu of the record, is instructive. It allows the parties, "with the approval of the agency ... [to] prepare and sign a statement of the case showing how the question arose and was decided, and setting forth so much only of the facts alleged and proved, or sought to be proved, as is essential to a decision of such question by the court.

minimum reporting requirements. *Hammond,* 270 Md. at 55–56, 310 A.2d at 551; *Pistoria v. Zoning Board,* 268 Md. 558, 570, 302 A.2d 614, 619 (1973); *Adams v. Bd. of Trustees,* 215 Md. 188, 195, 137 A.2d 151, 155 (1957); *Heaps,* 185 Md. at 379–80, 45 A.2d at 76; *Inst. of Mission Helpers et al. v. Beasley,* 82 Md.App. 155, 164, 570 A.2d 382, 386 (1990); *Ocean Hideaway Condominium Ass'n v. Boardwalk Plaza Venture,* 68 Md.App. 650, 658, 515 A.2d 485, 488 (1986). See § 10–214 which provides:

(b) *Contents.*—(1) A final decision in a contested case shall contain separate statements of:

(i) the findings of fact; and

(ii) the conclusions of law.

(2) If the findings of fact are stated in statutory language, the final decision shall state concisely and explicitly the facts that support the findings.

(3) If in accordance with regulations, a party submitted proposed findings of fact, the final decision shall state a ruling on each proposed finding.

The obvious purpose of such requirements is to facilitate judicial review.

None of these provisions refers to the exercise of discretion as occurred in the case *sub judice,* it may be observed. That is true, but it is also not dispositive. Ordinarily an agency exercises discretion at the behest, and to the benefit, of a party to the proceedings. Thus, when one of the parties requests the agency to reopen its case, between the proponent's motion and the proponent's opposition, the record ordinarily will reflect the reasons the proponent made the motion, the issue prompting it, and the reasons for the opposition. From these sources, simply by referring to the parties' arguments, the propriety of the exercise of discretion can be assessed. In other words, in those cases, the reason for the agency's exercise of discretion is apparent in the record.

The situation is critically different when it is the agency, rather than one of the parties, that is the moving force

behind the exercise of discretion. Unless the agency puts on the record, as would occur if a party was the movant, the issue with which it is concerned, the competing considerations bearing on that issue, or, after informing them of the issue, allows the parties to do so, the record will reflect only that the agency desires to reopen the proceedings. In that case, the reasons underlying the agency's decision will not be, and, indeed, could never be, apparent on the record.

To be sure, an agency's exercise of discretion is, and must be, reviewable. And it is reviewable on the record made before the agency; "decision," as used in § 10–215(g), is sufficiently broad to encompass the exercise of discretion. *See Bd. of Educ. v. Allender,* 206 Md. 466, 475–77, 112 A.2d 455, 459 (1955) (where the agency was charged with obtaining the low bid for a contract and the record reflected that the company to whom the contract was awarded was the lowest bidder, there was no abuse of discretion in the award of the contract to that bidder despite its failure strictly to comply with the bidding specifications); *Balto. Import Co. v. Md. Port Auth.,* 258 Md. 335, 342–44, 265 A.2d 866, 869 (1970) ("[T]he facts alleged . . ., if supported by competent evidence, and not justified by the Authority, might well establish a course of conduct so repugnant to fair dealing as to entitle the petitioner to relief.").

The Court of Special Appeals recognized, I think correctly, that the record does not support, either directly or by inference, the reopening in this case. It characterized the board's exercise of discretion as unfair, thereby branding it as arbitrary and capricious; it was simply another way of saying that the taking of additional testimony without any apparent, or even discernable, rational basis therefor is not permissible.

After three and a half hours of deliberations, the hearing board decided, unanimously, to call additional witnesses. It explained:

Gentlemen, we have been in deliberation for some time now. We have spent our time reviewing the evidence and

testimony that has been given so far in this case. It is the opinion of this board, of each member of this board, that there are additional witnesses who have not been called to this hearing who have evidence or testimony to give which is pertinent to this matter. We feel that it is in the best interest of the defendant and the agency, and in the best interest of fairness for the board to call additional witnesses to this hearing.

The respondent's objection having been overruled and his motion for reconsideration denied, the chairman of the board, by way of further explanation, stated:

> The board has discussed the argument put forth by [the respondent's counsel] [Counsel], I assure you this board is interested in fairness and the perception of fairness. That is the only reason that we adjourned back on September 23rd and decided to call additional witnesses. We are concerned with the fairness, and if [the respondent] Zeigler walks out of here today, that he be—have been given a fair and impartial trial, and the verdict be one that can be viewed as fair and impartial by anyone who views it, particularly [the respondent].

> \* \* \* \* \* \*

> As the board goes, we realize that we are going to decide this case on the facts that have been presented to it. We realize that we do have a job to determine whether the charges should be sustained or not, and most importantly, we have the responsibility to be fair. We are not here to uphold the Maryland State Police, its charges, or what it, or anyone else, wants done, or what the prosecution wants done. We are here to come to a fair determination of the charges that have been placed against [the respondent] Zeigler, irrespective of all the other things that may go on, or any summary issues surrounding the incident.

Neither of these statements is enlightening. They do not explain why the hearing had to be reopened. Not only do they fail to reveal precisely what the board expected the

additional evidence to show, they do not address at what the additional evidence was directed or why it was so critical as to require reopening of the case. All the statements do is make clear that the board, the trier of facts, wanted to hear additional evidence from specific witnesses, before it decided the case. Without, however, any indication of what that evidence would be or on what issue or issues it would have relevance, neither the significance of that additional evidence nor the propriety of obtaining it, *i.e.*, whether there was good cause for it, can be ascertained. Indeed it is probably fair to say that, since it is the board that is both judge and jury, only the board knows.

The board, to be sure, makes a great to do about its duty to be fair, committing, presumably, to discharge that duty without fear or favor. No matter how well intentioned the board may have been, and I don't question its intention, the statement of its good intentions leaves the parties and a reviewing court without a clue as to what it was about the evidence the board had before it that made it unfair, to the respondent, the State Police, or both, for the case to be decided on that evidence alone. Moreover, invoking fairness, but not explaining what specifically was unfair or the relevance of the additional testimony to that consideration, or its perception, about which the board expressed concern, falls woefully short of providing an adequate record on the basis of which the reopening can be upheld. I repeat, general statements about fairness, and even the board's good intentions, without more, do not provide sufficient information even to permit a reviewing court adequately to review the board's exercise of discretion, not to mention uphold it.

The factors which militate against allowing "willy nilly," the reopening of the trial at the whim of the trial judge also militate against permitting an administrative agency, at its whim, *i.e.*, for no good reason or, at least, none that is stated or apparent, from doing so in an administrative

context.[9] It is important that administrative proceedings, like trials, come to an end at some point (it is likewise desirable that administrative bodies be encouraged to be decisive) and that the parties to those proceedings be aware that the process is orderly and certain. Moreover, it is no less important in the administrative, than in the judicial, context that competence, not afterthought, be the preferred standard. More important, however, are two of the factors found significant by the Supreme Court of West Virginia, whether sufficient good cause has been shown to permit the taking of additional evidence and whether that evidence is significant, neither of which have been met here. Because we are not privy to the issue prompting the reopening or specifically what the additional evidence is, we cannot determine if the additional evidence is significant or needed.

Focusing on one of the reasons given by the Court of Special Appeals for finding an abuse of discretion and finding it lacking, the majority concludes that there was no abuse of discretion, observing, "the Board said nothing to justify a conclusion that its desire for additional evidence was unreasonable." Although it acknowledges, as it must, that the Board did no more than indicate its concern with fairness to the respondent, its responsibilities, and its ability to reach a fair decision on all of the charges, the majority undertakes no additional analysis to test whether those stated reasons were enough affirmatively to demonstrate the absence of arbitrariness. At no point does the majority, as far as the record reveals, consider whether the board's "reasons" are sufficient, in themselves, to indicate a ration-

---

**9.** It is even more appropriate in this case, involving as it does the Law Enforcement Officers's Bill of Rights, Md.Code (1957, 1992 Repl.Vol.) Art. 27, §§ 727–734D, the purpose of which is to ensure that an accused police officer enjoys certain safeguards. *See Moats v. Hagerstown,* 324 Md. 519, 526, 597 A.2d 972, 975 (1991); *Reed v. Baltimore,* 323 Md. 175, 183, 592 A.2d 173, 177 (1991). While not the equivalent of a criminal proceeding, *Widomski v. Chief of Police,* 41 Md.App. 361, 379, 397 A.2d 222, 232–33 (1979), those safeguards demand that the procedure employed in conduct of the hearing be predictable and regular.

al, hence, valid, exercise of discretion. Adopting the majority's reasoning, it seems inevitable that, whenever an administrative agency allows additional testimony after deliberations have begun, the decision whether it abused its discretion in doing so will be solely that of the agency; because it need not reveal specifically why it believes additional testimony is necessary, judicial review is effectively foreclosed. So long as the agency follows the formula endorsed by the majority, *i.e.,* invokes its commitment to fairness, especially to the defendant, stresses its intent to render a fair decision, and avoids saying anything "to justify a conclusion that its desire for additional evidence was unreasonable," it may reopen any hearing for any or no reason, without fear either of meaningful review or reversal. Even though administrative agencies generally are not bound by "common-law. rules of evidence," *Mont. Co. v. Nat'l Capital Realty,* 267 Md. at 376, 297 A.2d at 681–82, permitting on that basis such a result is absurd.