857 A.2d 638

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES**

v.

**Constance THOMAS.**

**No. 1015, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 9, 2004.

542

Judith Barr (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellant.

Steven M. Lubar (Keith J. Zimmerman, Kuhn, Smith & Collins, P.A., on brief), Baltimore, for appellee.

Panel: JAMES R. EYLER, ADKINS, and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

LAWRENCE F. RODOWSKY, Judge (retired, specially assigned).

The appellee, Constance Thomas, was a correctional officer employed by the appellant, Department of Public Safety and Correctional Services (the Department). After Ms. Thomas had been absent from duty without notifying her supervisor why she was absent, the Department considered that she had resigned without notice. This is the second judicial review action involving this separation of Ms. Thomas from State service. Under the applicable personnel regulation, the appointing authority has a discretion to expunge the resignation. For the reasons that follow, we shall affirm the agency's finding of resignation without notice. We shall remand in part, however, because the record fails to reveal that the Department exercised its discretion as to whether to expunge the resignation.

Ms. Thomas was employed in the Division of Pretrial Detention and Services (the Division). The regulation that is pertinent to this action is Maryland Regs. Code (COMAR) Title 17, "Department of Budget and Management," Subtitle 04, "Personnel Services and Benefits," Chapter 4, "Separations, Reemployment, and Reinstatement," .03, "Resignations." It provides in relevant part as follows:

"A. An employee may separate from employment by resigning.

. . . .

"D. An employee who is absent from duty without noti-
fying the supervisor of the reasons for the absence and of
the employee's intention to return to duty is absent without
leave. After 5 working days from the first day of absence,
the appointing authority shall advise the employee by certi-
fied and regular mail sent to the employee's last address of
record that the employee is considered to have resigned
without notice. A resignation without notice may be ex-
punged by the appointing authority when extenuating cir-
cumstances exist, and the employee had good cause for not
notifying the appointing authority.

"E. Resignations shall be reported to the Secretary.
Resignations that are tendered without the proper notice or
resignations without notice shall be entered in the employ-
ee's personnel record." [1]

COMAR 17.04.04.03D is hereinafter referred to as "the Rule."

The Department also has adopted Standards of Conduct, a
copy of which Ms. Thomas acknowledged receiving. In rele-
vant part, Standard of Conduct III, "ATTENDANCE RE-
QUIREMENTS," Part A, "Employee Responsibilities," reads
as follows:

"2. In situations where an employee does not have leave
approved and will not be reporting for duty as required,

---

1. Resignations based on notice are addressed in COMAR 17.04.04.03C
which provides:

"C. An employee who wishes to resign in good standing shall give
the appointing authority, in writing, at least 2 weeks notice of
resignation. If more than 2 weeks notice is required by an appoint-
ing authority, it must be approved by the Secretary. An appointing
authority may not require more than 30 days notice of a resignation.
If more than 2 weeks notice is required, the employee shall be
informed of the longer notice requirement during the orientation
required by State Personnel and Pensions Article, § 7–404, Annotated
Code of Maryland. An employee who fails to provide notice as
required shall have that fact entered in the employee's permanent
employment record. The Office of Personnel Services and Benefits
shall adopt guidelines governing employee resignations."

he/she shall contact his/her supervisor with a request for unscheduled leave.

"3. For absences that exceed one day, the employee shall call in daily until a date of return is established[.]"

At the evidentiary hearing of the administrative process Ms. Thomas's work attendance record was introduced through Gwendelyn Bullock, the acting personnel director for the Division. According to her personnel file, Ms. Thomas was injured at work on March 16, 2000, after which time she filed a claim with the Injured Workers Insurance Fund (IWIF). The Division first was notified of Ms. Thomas's IWIF claim on April 3, 2000, when she requested sick days. Ms. Bullock related that medical documentation "should be submitted to cover a time frame that would include either a return to work or the next appointment." She stated that a regulation of the Comptroller's office required medical documentation every pay period.

Ms. Thomas was absent from work on "sick accident" leave from mid-March through mid-September 2000, assertedly due to the work-related accident. She returned to work on September 20, 2000, and worked fairly consistently, with the exception of nine unscheduled days off, until November 27. From November 27 through the date of her termination, with the exception of a single day of work on November 29, Ms. Thomas did not report to work. The time record reveals that she had exhausted all of her personal, annual, and sick leave, and compensatory time by January 2, 2001, after which time the notation "FTR," signifying "failure to report," is listed on her time record. Ms. Thomas failed to report to work from January 2 through January 6, and from January 9 through January 12, the date of her termination.[2]

During December 2000 Ms. Thomas caused two certificates from her physician, Donald J. Hayes, M.D., to be delivered to her supervisor through a co-worker, O'Neil Dezonie. One certificate, dated December 5, 2000, read: "Excuse absence

---

2. Ms. Thomas was not scheduled to work January 7 and 8.

from 11/30/00 to 12/10/00[.] Return to work 12/11/00." The second certificate, dated December 20, 2000, read: "Excuse absence from 12/11/00 to pending treatment and response."

On January 12, 2001, LaMont Flanagan, the Commissioner of the Division, wrote to Ms. Thomas by certified and ordinary mail. He quoted the Rule and stated:

"Our records indicate you have been absent without notification to your supervisor, in person or in writing, since 01/02/01. Therefore in accordance with the above stated regulation, we have terminated your employment as a correctional officer effective 01/12/01."

Ms. Thomas contacted her union representative, Andrew Jackson. The events that thereafter transpired are not presented with precision in the record.[3]

Documentary evidence reflects that on January 16, 2001, there was a discussion concerning Ms. Thomas's "grievance or discipline" with the "appointing authority." This information is recited in a preprinted, fill-in-the-blanks, "appeal and grievance form" that Mr. Jackson filed with the personnel division of the Department on January 26, 2001. In the blank headed, "State the issues of fact and law that support the employee's appeal," Mr. Jackson inserted "COMAR 17.04.05." [4]

At a time that is not specified in the record, there was exhibited or delivered to the Department a certificate by Dr.

---

**3.** There appear to be at least four reasons for this deficiency. One, the record on this appeal deals with the second action for judicial review involving Ms. Thomas's separation from service and does not include the specific paper trail that may have been included in the record of the first judicial review action. Two, the Department's witness, Ms. Bullock, testified only from attendance records and a personnel file, but she had no personal knowledge of the events. Three, Mr. Jackson did not testify at the agency hearing, apparently because he was out of town. Four, although Ms. Thomas testified, she had no personal knowledge of all of the contacts between the Department and the union, on her behalf. It appears that she was present at one meeting, at the "State employment office," but the content of that meeting was not explored.

**4.** This regulation deals with "Disciplinary Actions" and requires consideration of "mitigating circumstances." COMAR 17.04.05.02.

Hayes, dated January 22, 2002, that stated that Ms. Thomas "continues to be under my care." Of similar vague origin in the record is a letter from Dr. Hayes, dated January 23, 2001, addressed, "To Whom It May Concern," the text of which is set forth in the margin.[5]

The record also contains a letter dated February 8, 2001, from the supervisor, Employee Relations Unit, Office of Personnel Services and Benefits, of the Maryland Department of Budget and Management (DBM). It was addressed to Mr. Jackson and acknowledged receipt of Ms. Thomas's grievance. By this letter the writer, per an agreement of all parties, remanded the case to Step I of the grievance appeal procedure in order to give the Division "an opportunity to further review this matter."

The reference is to Maryland Code (1993, 1997 Repl. Vol.), § 12–203 of the State Personnel and Pensions Article (SPP). Section 12–203 specifies that a grievance is initiated by filing in writing with the grievant's appointing authority (subsection (a)), who is to render a written decision within ten days after a conference with the grievant (subsection (d)). Step II of the grievance procedure is an appeal to the "head of the grievant's

---

5. The letter reads in full:
 "Re: Constance Thomas
 DOB: February 8, 1956
 . . . .
 "Ms Constance Thomas has been under my care since August 26, 1996. In November, 2000, I began treating her for post-traumatic stress or other acute stress-related syndrome. The stress related to her job has seemed to have affected her mental state. She is unable to concentrate, focus, or be alert for situations on the job. Her physical health has also deteriorated since the accidental inhalation in 1998. She continues to have loss of her voice, respiratory problems—difficulty breathing, wheezing, etc.—and headaches and insomnia have occurred since returning to work.
 "Ms Thomas is being observed by me closely and has been referred for ENT consultation. She is also receiving counselling for the emotional stress that she is having. She is taking medication daily for her respiratory problems, for her emotional state, and to help her sleep.
 "I strongly recommend that Ms. Thomas does not return to work as a correctional officer at this time because of health reasons and inability to perform her job properly."

principal unit or designee," who also is obliged to issue a written decision. SPP § 12–204(a) and (c). The third step is review by the secretary of the DBM. SPP § 12–205(a). At that level, "[i]f the grievance is not settled, the Secretary or designee shall refer the grievance to the Office of Administrative Hearings [OAH]." SPP § 12–205(b)(2)(ii). In any event, Ms. Thomas's grievance obviously was not resolved, and a contested case hearing was held before an administrative law judge (ALJ).

The ALJ looked to SPP § 12–101(b)(1), which defines "grievance" to mean

"[a] dispute between an employee and the employee's employer about the interpretation of and application to the employee of:

"(i) a personnel policy or regulation adopted by the Secretary; or

"(ii) any other policy or regulation over which management has control."

The ALJ considered that "the action grieved" was "management's issuance of the resignation without notice," and, applying the definition of "grievance," concluded that Ms. Thomas had not presented a grievable issue. The grievance was dismissed.[6]

Ms. Thomas sought judicial review in the Circuit Court for Baltimore City. That court vacated the ALJ's order and remanded the matter to the OAH "(1) for a full evidentiary hearing on all the issues raised, including and not limited to the COMAR Title 11 and Title 12 issues, and following the hearing (2) for a full decision on all issues raised." The Department did not appeal that judgment to this Court.

On remand, the ALJ considered that

"[t]he central question is whether [Ms. Thomas's] termination on January 12, 2001 was a disciplinary action and

---

**6.** In this Court, Ms. Thomas does not argue that she was entitled to individualized, pre-termination notice that she was at risk of separation from service.

grievable pursuant to SPP § 11–101 or a resignation from employment, SPP § 12–101 and COMAR 17.04.01.04A(1) and (3), and not subject to the grievance procedures." [7]

The ALJ made two significant fact-findings. He concluded "that the Grievant failed to prove by a preponderance of the evidence that she provided information to her employer of her continued illness effective January 2, 2001." He also concluded that "she failed to present credible evidence to support her position," namely, "that her January 12, 2001 separation was a disciplinary action[.]" The ALJ again held that Ms. Thomas had "resigned without notice, and that management's issuance of the resignation without notice, is not a grievable issue." The ALJ's letter transmitting his opinion advises that his opinion was the final decision of the DBM.

On Ms. Thomas's second petition for judicial review, the circuit court again vacated and remanded. It directed the OAH to hold a full evidentiary hearing on all issues, specifically:

"1. Whether the Respondent properly applied the provisions of [the Rule];

"2. If the Respondent failed to properly apply [the Rule], whether the Petitioner's matter is grievable under [SPP] Title 12;

"3. Whether Respondent discharged the Petitioner in violation of [SPP] § 11–106; and

"4. Whether Petitioner was denied her right to appeal her discharge in violation of [SPP] § 11–109."

The Department appealed to this Court. At the threshold, there are two overarching aspects to this appeal. First, there was substantial evidence that the triggering events expressly set out in the Rule were present here for the Department's initial application of the Rule to Ms. Thomas. Second, both the ALJ's opinion, and the Department's brief, direct little or no attention to that provision in the Rule which states that the

---

7. COMAR 17.04.01.04 is a reservation of management rights provision.

resignation "may be expunged by the appointing authority when extenuating circumstances exist, and the employee had good cause for not notifying the appointing authority." Hereinafter, we shall refer to the quoted language as the "Second Look" provision.

Based on the arguments of the parties in this Court, the issues fairly may be restated by us as follows:

 I. Was the Second Look provision of the Rule invoked by Ms. Thomas in the administrative process?

 II. If so, was the administrative process governed by SPP Title 11, "Disciplinary Actions, Layoffs, and Employment Terminations in State Personnel Management System," or by SPP Title 12, "Grievance Procedures in State Personnel Management System"?

 III. If governed by Title 12, is the complaint grievable? and

 IV. If grievable, did the Department address the Second Look provision?

### Standard of Review

In reviewing the decisions of administrative agencies, such as that handed down by the ALJ in this case, our review is limited in scope. In such an appeal, "this Court's role is 'precisely the same as that of the circuit court.'" *Stover v. Prince George's County,* 132 Md.App. 373, 380, 752 A.2d 686, 690 (2000).

> "A distinction is drawn in the scope of review depending upon whether the court is reviewing an administrative agency's findings of fact as opposed to purely legal conclusions. 'To the extent the issues on appeal turn on the correctness of an agency's findings of fact, such findings must be reviewed under the substantial evidence test.'"

*Beeman v. Department of Health & Mental Hygiene,* 107 Md.App. 122, 136, 666 A.2d 1314, 1320–21 (1995) (citation omitted). Under this test, our inquiry is focused on whether evidence exists in the record from which a reasonable person could draw the same conclusion as the ALJ. *Caucus Distrib.,*

*Inc. v. Maryland Securities Comm'r*, 320 Md. 313, 324, 577 A.2d 783, 788 (1990). In applying this test, however, we "d[o] not substitute [our] judgment, even on the question of the appropriate inference to be drawn from the evidence, for that of the agency." *Beeman*, 107 Md.App. at 136–37, 666 A.2d at 1321. Rather, we afford deference to the factual findings of the agency, as long as they are supported by the record. *Christopher v. Montgomery County Dep't of Health & Human Servs.*, 381 Md. 188, 199, 849 A.2d 46, 52 (2004).

In contrast, "[d]etermining whether an agency's 'conclusions of law' are correct is always, on judicial review, the court's prerogative, although we ordinarily respect the agency's expertise and give weight to its interpretation of a statute that it administers." *Id.* at 198, 849 A.2d at 52. Further, an arbitrary and capricious standard applies to our review of an agency's discretionary functions, making such actions essentially unreviewable "[a]s long as [the agency's] exercise of discretion does not violate regulations, statutes, common law principles, due process and other constitutional requirements[.]" *Maryland State Police v. Zeigler*, 330 Md. 540, 557, 625 A.2d 914, 922 (1993). It is with these principles in mind that we evaluate the questions presented.

# I

We hold that Ms. Thomas sufficiently invoked the "Second Look" provision of the Rule. After receipt of the January 12, 2001 termination notice, Ms. Thomas obtained her labor union's intervention on her behalf. After some discussion with the "appointing authority," Ms. Thomas, through Mr. Jackson, formally invoked the grievance procedure on January 26. Even though the filing cited COMAR 17.04.05, the personnel rules relating to disciplinary actions, the obvious purpose of the grievance was to obtain a reconsideration of Ms. Thomas's separation from service.

The Department, as appellant, points out that "Ms. Bullock testified that Ms. Thomas never attempted to provide any additional information, including medical documentation re-

garding her sick status, to the appointing authority[.]" Ms. Bullock was not the appointing authority, and the record is far from clear that a copy of any materials submitted in support of the grievance would have been maintained in the file from which she was testifying.

On the other hand, there was hearsay evidence from Ms. Thomas that Mr. Jackson tendered one or more of the medical certificates from Dr. Hayes to a Lieutenant Jones "in payroll, personnel over there in Central Booking," who is said to have refused to accept them.

In any event, the ALJ made no factual findings concerning what transpired in the grievance process, consistent with his view that no grievable issue was presented. On remand, what Ms. Thomas produced, and when, should be fully explored.

## II

SPP Title 11 contains no definition of a "disciplinary action." Section 11–104 of that title, however, sets forth permitted disciplinary actions. Resignation without notice under the Rule is not among them.[8] On the other hand, SPP

---

8. SPP § 11–104 reads as follows:

"An appointing authority may take the following disciplinary actions against any employee:

"(1) give the employee a written reprimand;

"(2) direct the forfeiture of up to 15 work days of the employee's accrued annual leave;

"(3) direct up to 3 work days of emergency suspension of the employee, with pay, to immediately remove the employee from the workplace when the appointing authority believes that the employee:

"(i) poses a threat to self, another individual, or State property; or

"(ii) is incapable of properly performing the employee's duties because of extraordinary circumstances;

"(4) suspend the employee without pay;

"(5) deny the employee an annual pay increase;

"(6) demote the employee to a lower pay grade; or

"(7) with prior approval of the head of the principal unit:

"(i) terminate the employee's employment, without prejudice; or

"(ii) if the appointing authority finds that the employee's actions are egregious to the extent that the employee does not merit employment in any capacity with the State, terminate the employee's employment, with prejudice."

§ 12–101(b)(1) defines "grievance," in essence, to be a dispute about the interpretation and application of a personnel policy or regulation.[9] In the instant matter, Ms. Thomas disputes the Department's interpretation and application of the "Second Look" provision of the Rule. Thus, the matter proceeds under Title 12.

As a consequence, SPP § 11–106(a)(1) does not apply. That provision requires the appointing authority, before taking any "disciplinary action related to employee misconduct," to investigate the alleged misconduct. A potential deficiency in the administrative process in this matter, which the circuit court directed be clarified on remand, was the apparent absence of any investigation of the "misconduct" giving rise to the "discipline." The Rule, however, addresses in a different fashion the problem of getting the relevant facts. Generally conduct that gives rise to discipline will occur at or near the workplace or is of such a nature that it will bring public disrepute to State service. *See* COMAR 17.04.05.04 (listing actions for which an employee may be disciplined).[10]

The employee who has failed to report for duty, without authorization, obviously is not present at the workplace to explain the absence. The policy underlying the Rule appears to be to encourage the absent employee to come forward with any justification for the absence without notice. The employee's cooperation seemingly is particularly required when the underlying problem may require access to the employee's medical records.

In view of our holding in this Part, the procedures under SPP Title 11 will not be a relevant consideration on remand. Rather, the burden on remand will be on Ms. Thomas to persuade the Department to exercise in her favor its discretion under the "Second Look" provision of the Rule.

---

9. SPP § 12–101(b)(1) is quoted in full, *supra*, at 549, 857 A.2d at 643.

10. One of the actions for which an employee may be disciplined is "[u]sing leave contrary to law or policy." COMAR 17.04.05.04B(14). On and after January 2, 2001, Ms. Thomas was not using leave. She was simply A.W.O.L.

## III

 It follows from what we have said that Ms. Thomas's complaint is grievable. See Part II, *supra.* The ALJ, however, twice expressed the view that, because Ms. Thomas had resigned, she was no longer an employee in the State Personnel Management System and had no right to invoke the grievance procedure under SPP Title 12. We disagree. The "Second Look" provision of the Rule is an integral part of the Rule that the employee, who is "considered to have resigned," may invoke through the grievance procedure.

Prior to the State Personnel Management System Reform Act of 1996, Chapter 347 of the Acts of 1996, and prior to the merger of the former Department of Personnel into the DBM by Chapter 349 of the Acts of 1996, the predecessor of the Rule was found in the regulations of the then Department of Personnel at COMAR 06.01.01.51B. That regulation required a pre-termination notice of status with the opportunity to respond within three working days following receipt of the notice.[11] The former regulation was superseded by the Rule, adopted as an emergency provision effective February 12, 1997. See 24:5 Md. R. 391. The Rule was permanently adopted effective September 8, 1997. See 24:18 Md. R. 1297. Clearly, due process considerations underlie the Rule's "Second Look" provision. *See Cleveland Bd. of Educ. v. Louder-mill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (holding that member of Ohio Classified Civil Service had a

---

11. Former COMAR 06.01.01.51B read as follows:

"B. Any employee who is absent from duty without leave from the superior officer without notifying the superior officer of the reasons for his absence and of his intention to return, shall be considered to be absent without leave. Within a period not to exceed 5 working days from the first day of absence, the department shall advise the employee of his status by certified letter. The letter shall notify him that if he does not respond in writing to the superior officer by writing or delivering the response within a period of 3 working days after receipt of the notice, he shall be considered to have resigned effective as of his last day of work. Failure to respond as described above shall be treated as a resignation without notice and a report of it made to the Secretary."

property right in continued employment of which he could not be deprived by the state without procedural due process). Thus, even if, as of January 12, 2001, Ms. Thomas was a former employee for other purposes, the constitutional right to Due Process requires that she be permitted to invoke the grievance procedure to assert her claims under the Second Look provision.

## IV

Despite the first remand by the circuit court for a full hearing, the Department, at that second hearing, did not address Ms. Thomas's evidence directed to the "Second Look" provision of the Rule. The Department has yet to advise whether it exercised its power to expunge the resignation and, if so, by whom that power was exercised and why it was exercised adversely to Ms. Thomas. The circuit court acted appropriately in ordering a second remand.

For guidance of the Department on remand, we address Ms. Thomas's argument that she had no intent to resign. An unexpressed intent to return to work at some future time does not produce an automatic expungement of the resignation. So to permit would frustrate the policy of getting the employee's attention and motivating disclosure. Under the Rule the intent relevant to the Second Look provision is the absent employee's expressed intent "to return to duty." This ordinarily would be manifested by furnishing a return to work date, or an estimated return to work date, or some explanation as to why a return to work date cannot even be approximated when the Second Look provision is invoked. Based on this information, management can take appropriate steps in response.

## Conclusion

The Department determined that, under the facts, it was justified in considering that Ms. Thomas had resigned without notice. To the extent that the circuit court vacated that determination, we reverse the circuit court. Further, we

modify the issues directed by the circuit court to be considered by the OAH on remand. We direct that the issue to be decided by the OAH is whether, in its discretion, it should expunge Ms. Thomas's resignation because she has shown exceptional circumstances and good cause for not notifying the appointing authority of the reasons for her absence from duty and of her intention to return to duty. We affirm the circuit court's order that the matter be remanded.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THAT COURT FOR REMAND TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.**